THE STATE, EX REL. EDWARD W. SIMERAL, COUNTY ATTORNEY, V. WEBBER S. SEAVEY.

1. **Cities of Metropolitan Class:** CHIEF OF POLICE. The appointment of the respondent, as chief of police of the city of O., by the board of fire and police commissioners appointed by the governor under section 145 of an act entitled "An act. incorporating metropolitan cities, and defining, regulating, and prescribing their duties, powers, and government," approved March 30, 1887, under the facts and circumstances as set out in the answer, *Held,* A legal appointment within the scope and meaning of the said act.

2. ———— : CONSTITUTIONAL LAW. The provision of the above mentioned act, whereby it is made the duty of the governor to appoint a board of fire and police commissioners for each city of the metropolitan class ; *Held,* Not to be repugnant to the constitution.

ORIGINAL information in *quo warranto.*

*E. W. Simeral, G. W. Ambrose,* and *J. C. Cowin,* for relator, cited: *People v. Hurlbut,* 24 Mich., 44. *People v. Forquer,* Breese (Ill.), 104. *People v. Board,* 25 Mich., 153. *People v. Mayor,* 51 Ill., 17. *Village of Glencoe v. People,* 78 Ill., 382. *People v. Detroit,* 28 Mich., 228.

*George B. Lake,* for respondent, cited : *Baltimore v. Board of Police,* 15 Md., 376. *People v. Draper,* 15 N. Y., 532.

COBB, J.

This is an original proceeding in this court, by Edward W. Simeral, county attorney of Douglas county, relator, against Webber S. Seavey, respondent.

The complaint is, in substance, an information in the nature of a *quo warranto*; its general object, to obtain a judgment against the respondent upon his right to execute the office of chief of police of the city of Omaha. It alleges that the city of Omaha is a city of the metropolitan class ; that under and by virtue of the laws governing cities of the metropolitan class, there was appointed by the governor a fire and police commission, consisting of four persons ; that the members of said board of fire and police commissioners at and before the time thereinafter set forth neglected and refused to enter into a good and sufficient bond for the faithful performance of their duties, as the ordinances of said city required, and long before any bond was approved by the authorities of said city, said commissioners pretended to and did proceed to make appointments of firemen and policemen ; that at the times thereinafter set forth no rules and regulations governing said board of fire and police commissioners had been prescribed by ordinance by the mayor and council of said city ; that on the 19th day of May, 1887, said defendant was by said board of fire and police commissioners appointed chief of police of said city of Omaha, but that at the time of said appointment the bonds of said commissioners had not been approved by said city council, nor had any rules and regulations by ordinance been adopted by said council governing the removal and appointment of chief of police, and that said commissioners, without law

or authority, removed Thomas Cummings, who, at that time, was acting as chief of police, and appointed in his stead said defendant, whom, petitioner alleges, is now and has been ever since his pretended appointment, wrongfully and unlawfully exercising and usurping the functions of said office, and that said council has never approved or confirmed the said appointment of said defendant as by law required.

By way of amendment, said relation also alleges that before the passage of the act entitled " An act to incorporate metropolitan cities," etc., approved March 30, 1887, the city of Omaha was a city of the first class, under the laws of the state of Nebraska then in force with respect thereto; that when said act relating to metropolitan cities took effect the city of Omaha had a police force and a city marshal as then provided by act with respect to cities of the first class and ordinances of the city of Omaha thereunder; that the legislature adjourned *sine die* on the first day of April, 1887, and said legislature has not been in session since; that the said appointments made by the governor, as aforesaid, were made after the adjournment of said legislature, and the appointments were not made with the advice and consent of the senate; that the said appointments were, therefore, unconstitutional and void; that the offices to which said appointments were pretended to be made were original offices and original appointments, and not a vacancy or appointment to fill a vacancy.

That the said pretended board of fire and police have appointed a large number of police for said city, that at the time of the pretended appointment and reappointment of said defendant herein, the said Cummings was acting as chief of police, and all other policemen continued in their office; and at the time of the pretended appointment and reappointment of said defendant and the appointment of said policemen there were no funds whatever provided by the

mayor and council to pay the salary of said defendant or the salary of said other policemen, and at no time since the passage of the act with respect to metropolitan cities have there been any funds whatever provided by the mayor and council to pay the salary of said defendant, or the salaries of said policemen ; and that at the time of the appointment of the defendant, and of the other policemen by said board, the mayor and council of said city, under the law, could not provide any funds to pay such salaries, as the full extent of their authority, when exercised in behalf of raising a police fund, realized only a sufficient amount to pay the salaries of the policemen then in office, and the number appointed by said board far exceeded the amount of funds for salaries which it is possible for the mayor and city council to provide under the law, etc.

The respondent entered a voluntary appearance and answered. I quote from the answer as the foundation of respondent's claim to the said office.

"First. He admits that under and by virtue of the law of the state of Nebraska governing metropolitan cities there was duly appointed, by the governor of said state, a fire and police commission, consisting of four persons, viz.: L. M. Bennett, Christian Hartman, George I. Gilbert, and Howard B. Smith. And in this behalf the defendant alleges that under said law the mayor of the city of Omaha became and is *ex-officio* a member and the chairman of said board ; that shortly after their said appointment to said board on the 10th day of May, 1887, the said Bennett, Hartman, Gilbert, and Smith each took and subscribed an oath to support the constitution of the United States, the constitution of the state of Nebraska, and faithfully and impartially perform the duties of the office of commissioner of fire and police, according to law, and to the best of his ability ; and, also, that he would to the best of his ability discharge his duties as a member of the board of fire and police of the city of Omaha, and that in making appoint-

ments, considering promotions or removals, he would not be guided or actuated by political motives or influences, but would consider only the interests of the city and the success and effectiveness of said department of fire and police; that said oaths were filed with the city clerk of said city May 10, 1887, whereupon said Bennett, Hartman, Gilbert, and Smith, together with the mayor of said city, organized said board and entered upon the duties thereof, which they have ever since continued to perform.

"Second. That at the time of the appointment and qualification as aforesaid of the members of said board, there was no law or ordinance of said city requiring of them official bonds; that the first requirement of this kind was by ordinance of said city approved June 15, 1887; that immediately after the passage and approval of said ordinance requiring such bonds, all of the said commissioners appointed as aforesaid gave good and sufficient bonds in exact compliance with the requirements of said ordinance; that the bonds of said Bennett and Hartman were approved by said city council on or about the 9th day of August, 1887, while those of said Gilbert and Smith were rejected, for the sole reason that the names of the sureties who had signed the bonds respectively did not also appear in the body of those instruments as well; that immediately upon the rejection of the bonds of said Gilbert and Smith for this technical reason, they each filed new bonds, obviating said objection, and in all respects complying with the requirements of said ordinance in this regard; that notwithstanding these new bonds were duly presented to said city council August 30, 1887, that body has failed, up to the present time, either to approve or reject them.

"Third. That while it is true, as relator alleges, that no rules and regulations for the government of said board of fire and police commissioners have been prescribed by an ordinance of said city, yet it is true that the said board of fire and police commisioners did, on the 16th day of

May, 1887, prepare and adopt certain rules and regula-
tions for the guidance of the officers and men of the fire
and police department of said city, and for the appointment,
promotion, removal, trial, and discipline of said officers
and men, and such as said board considered proper and
necessary, which said rules and regulations were by said
board duly submitted to said city council for its action on
the 17th day of May, 1887, but respecting which the said
city council has, as yet, taken no action, either of approval
or rejection.

"Fourth. That defendant was appointed chief of police
of said city by said board, at or about the time alleged in
the petition, and before the members of said board had
given their bonds as aforesaid ; that at the time he was
so appointed he alleges there was no law requiring, as a
requisite of qualification, that they should give bonds, nor
was there any ordinance of said city to that effect until
long after said appointment of defendant was made. And
defendant also admits that the said city council has never
appointed or confirmed the appointment of said defendant
to said office of chief of police of said city, the duties of
which he is now exercising, under and by virtue of the
appointment made as aforesaid," with a general denial of
all of the other allegations of the petition.

There was no other pleading filed in the case, but the
cause was argued at the bar as upon demurrer to the
answer.

A general demurrer to the answer presents the following
question : Was the appointment of the respondent by the
board of fire and police commissioners of the city of
Omaha to the office of chief of police of said city, under
the facts and circumstances of the case as set up in the
answer, legal?

In discussing this question I will premise by saying
that at the time of the passage and approval of the act
entitled " An act incorporating metropolitan cities and de-

fining, regulating and prescribing their powers and government," Omaha was a city of the first class, organized and existing under and having for its charters an act entitled " An act to incorporate cities of the first class and regulating their powers, duties, and government," approved March 1, 1881, together with certain amendments thereto, all constituting chapter 13 of the Compiled Statutes of 1885.

The act first above referred to was not an amendment, but an independent statute designed to be perfect in itself, and by its 173d section repealed the act last above referred to, and all acts amendatory thereof, as well as all acts and parts of acts in conflict therewith. It contains an emergency clause, and therefore took effect and became of force immediately upon its passage.

By the terms of the first section the said act is made to apply to all cities of the state now having a population of sixty thousand inhabitants or more, as shown by the state census of 1885, and all cities which shall hereafter have attained a population of sixty thousand inhabitants, or upwards. The second section provides in what manner such cities as shall hereinafter have attained the necessary number of inhabitants shall be brought within the operation of said act.

There is no provision of said act in terms continuing any officer or policeman appointed under the former charter in office under the new one, but they would doubtless so continue upon general principles of law and by necessity, until the election or appointment of their successors, under the new charter. But with this qualification it is clearly the intent and within the scope of the act to establish a new government for the class of cities thereby established.

Section 145 is devoted to the establishment of a department of fire and police for the new class of metropolitan cities, and is in the following words :

" In each city of the metropolitan class there shall be a board of fire and police, to consist of the mayor [who shall be *ex officio* chairman of said board] and four electors of said city, to be appointed by the governor. The governor shall appoint as the commissioners above four citizens, not more than two of whom shall be of the same political party. Two of them of different political party faith and allegiance shall be designated in their appointment to serve for two years, and the other two, also of different political party faith, shall be designated to serve for four years. And, thereafter, at the expiration of said term, and each period of two years, the governor shall appoint two members of said board.

" For official misconduct the governor may remove any of said commissioners; and all vacancies in said board by death, resignation, or removal, shall be filled by the governor for the unexpired term, and all vacancies from whatever cause shall be so filled that not more than two of the members of said board shall be of the same political party, or so reputed. All powers and duties connected with and incident to the appointment, removal, government, and discipline of the officers and members of the fire and police departments of the city, under such rules and regulations as may be prescribed by ordinance, shall be vested in and exercised by said board. A majority of said board shall constitute a quorum for the transaction of business, and, in the absence of the commissioner of fire and police, the mayor shall act as chairman. Before entering upon their duties each of said officers shall take and subscribe an oath, to be filed with the city clerk, faithfully, impartially, honestly, and to the best of his ability, to discharge his duties as a member of said board, and that in making appointments, or considering promotions or removals, he will not be guided or actuated by political motives or influences, but will consider only the interests of the city, and the success and effectiveness of said departments. The board

of fire and police shall have power, and it shall be the duty of said board to appoint a chief of the fire department, an assistant chief of the fire department, and such other officers of the fire department as may be deemed necessary for its proper direction, management, and regulation, and under such rules and regulations as may be prescribed by ordinance; said board may remove such officers, or any of them, whenever said board shall consider and declare such removal necessary for the proper management or discipline, or for the more effective working or service of said department. The board of fire and police shall also employ such firemen and assistants, or may authorize the chief of the fire department so to do, as may be proper and necessary for the effective service of said department to the extent and limit that the funds provided by the mayor and council for that purpose will allow. The board of fire and police shall have power, and it shall be the duty of said board to appoint a chief of police and such other officers and policemen, to the extent that funds may be provided by the mayor and council to pay their salaries, as may be necessary for the proper protection and efficient police of the city, and as may be necessary to protect citizens and property and maintain peace and good order. The chief of police and all other police officers and policemen shall be subject to removal by the board of fire and police, under such rules and regulations as may be prescribed by ordinance, whenever said board shall consider and declare such removal necessary for the proper management or discipline, or for the more effective working or service of the police department. It shall be the duty of said board of fire and police to adopt such rules and regulations for the guidance of the officers and men of said departments, and for the appointment, promotion, removal, trial, or discipline of said officers and men, as said board shall consider proper and necessary, and when said rules and regulations shall be approved by the mayor

and council, they shall have the same force and effect as ordinances, and can only be changed by and with the consent of the mayor and council. The said board of fire and police shall have such further powers and perform such other duties as may be authorized or defined by ordinance."

There can be no doubt of the object, meaning, and intent of this section. While it is true that the act contains provisions outside of it under which the mayor and council could find authority for the establishment of a system of police and the appointment of police officers, yet it by no means follows that this section can be rejected in construing the act, nor can it be done with due regard to sound rules of construction. Our object is to arrive at the real intent and meaning of the legislature in drafting and enacting the statute. In reading it for that purpose we are not at liberty to reject any of its words, if a meaning can be attached to them consistent with the general scope and purpose of the act. But we find provisions somewhat conflicting with each other. We have seen that section 145 makes it the duty of the governor to appoint four commissioners, who together with the mayor shall constitute a board of fire and police, and it is made the duty of said board to appoint a chief of police for such city, and generally vests in said board all powers and duties connected with and incident to the appointment, removal, government, and discipline of the officers and members of the * * police department. We also find section 53 in the following language:

"SEC. 53. The mayor and council shall have power to establish, regulate, and support night watch and police, and to define the duties thereof, except as otherwise herein specially provided."

Now this a general provision which it is suggested would furnish authority for a police establishment for any city of the metropolitan class were section 145 expunged from the

statute.   This, I think, would be so, and yet it by no means follows that, with both sections in the act, 145 does not contain by far the more studied, elaborate, and perfect expression of the will of the legislature.   Moreover it is believed to be a sound rule of construction in law and logic, that general provisions will give way to the force of special enactment, when the latter is broad and clear enough to cover the whole ground and express the undoubted intention of the legislature.

It is urged that the appointment of fire and police commissioners, and they, acting together with the mayor, appointing a chief of police for the city, is the imposition by the state upon the city of taxes for corporate purposes, and, hence, in violation of the latter clause of section 7 of article IX. of the constitution, which reads: "The legislature shall not impose taxes upon municipal corporations or the inhabitants or property thereof for corporate purposes."

Section 79 of the act, among other things, empowers the mayor and council "to levy and collect on all such property, for the sole and exclusive purpose of maintaining and paying the police department of any such city, not to exceed five mills on the dollar valuation in any one year, taxes levied for such purpose to constitute a special fund for said purpose."   And it was stated by counsel at the argument, and not denied, that the mayor and council of the city of Omaha have acted under such authority and levied a tax for the current half year sufficient to provide ample funds for the support of the police department. Section 167 fixes the salaries of officers in cities of the metropolitan class, including the chief of police.   These funds will doubtless be appropriated and disbursed, and the same rate of salary paid to a chief of police, whether the respondent or any other appointee of the board of fire and police commissioners continues to fill the office, or gives way to the appointee of the mayor and council.   So far as

the current half year is concerned, the tax has already been imposed by the city authorities acting under the provisions of the law, a line of action which does not seem to have been rendered either more or less necessary by reason of the peculiar provisions of section 145, or the action of the state, or of any of its officers or appointees thereunder.

Section 145 also provides that before entering upon their official duties the said commissioners of fire and police shall take, subscribe, and file with the city clerk a certain and peculiar official oath therein prescribed. The section does not provide that they shall give an official bond. In the answer it is alleged that at the time of the appointment of respondent by the said board there was no ordinance of said city requiring the members of said board to give bonds. This allegation standing as a demurrer, is taken as true.

It is contended by counsel for the relator that the appointment of the members of the board of fire and police commissioners by the governor is void, for the reason that such appointment was not made by and with the advice and consent of the senate, and to this point section 10 of article V. of the constitution is cited. Said section is as follows:

"SEC. 10. The governor shall nominate, and by and with the advice and consent of the senate (expressed by a majority of all the senators elected, voting by yeas and nays), appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise by law or herein provided for, and no such officer shall be appointed or elected by the legislature."

The language of the act is, "The governor shall appoint," etc., without the qualification that such appointment shall be dependent upon the advice and consent of the senate. These officers' offices are created by law, but their appointment is by law otherwise provided for than in the mode

pointed out in the section of the constitution quoted. The contention is, that it would be competent for the statute to have designated some other officer or person to make these appointments, in which case the advice and consent of the senate would not be required, but that it is incompetent for a statute to clothe the governor with power to make appointment of any officer, without such qualification and restriction. I know of no reason, nor has any been suggested, for this distinction. And while the argument *de conveniance* may not be admissible in discussing a constitutional question, some consideration is due to the general understanding and practice in this state, where it will not be denied that, throughout its history, not a session of the legislature has passed without the passage of laws in terms similar to the one now under consideration, and their execution by the governor without submitting his appointments to the senate. I need only instance the cases of notaries public, the officers of the military staff, and the several district judges whose appointment have become necessary to supply the new judicial districts, and the additional judges to old ones, as from time to time provided by law.

It is further objected that the legislature has no power to make party affiliation a qualification for office. Speaking for myself alone, I am quite inclined to agree with counsel in this objection, and yet I think that the language of the act out of which this objection springs must be regarded as directory merely; that it spent its entire force upon the governor, and that the appointments made by him under the provisions of the section where such language occurs are neither more nor less legal, to whatever party, or no party, such appointees or either of them belong.

In the case of *The People v. Hurlbut,* 24 Mich., 93, cited by counsel for the relator, Judge Cooley, in delivering his opinion, speaking upon a branch of said case

involving a question almost identical with the one we are now considering, said : " Nor can the whole act be void because of the provision that the appointees under it shall be members of two certain political parties. That provision, so far as it was designed to control appointments for the future, is simply nugatory, because the legislature on general principles have no power to make party affiliation a qualification for office. But so far as the provision can be regarded as a declaration that the appointees named have been selected because they sustained the specified party relations, we need only say that where a right of choice exists, an election cannot be held void because of the reasons assigned for the choice made," etc. I therefore come to the conclusion that the above question, as raised by the demurrer, must be answered in the affirmative.

Counsel for relator also raise certain constitutional questions to the right of the respondent to the said office, which may be resolved into the following proposition :

Is the provision of the act in question, making it the duty of the governor to appoint the commissioners of fire and police for metropolitan cities, repugnant to the constitution ?

On this point, counsel in the brief say : " It is contrary to the general policy of the constitution, with regard to municipal corporations ; a constitution that has so guarded their interests that it has inhibited the legislature from authorizing the construction of a street railway upon their streets without the consent of the corporation." This citation from the constitution, taken together with the fact that they make no other therefrom, would indicate, even had they not so stated at the bar, that this point is predicated upon the spirit of the constitution, and not upon the letter of any specific provision.

It is, no doubt, the general spirit of our constitution and institutions, and in accord with the habits and traditions of our people, that the inhabitants of every subdivision of the

state shall have an equal share and responsibility in public affairs, so far as the same shall have been found conducive to the public safety, the preservation of the public peace, and the conservation of the public morals, and in every case of doubt in construing a statute, where such construction might turn upon the recognition and fostering of such spirit, no court would be blind to its duty in that behalf. And yet it is the boast of the American people in every state that they live under a written constitution and do not look for a guaranty of their rights or liberty to any intangible code of traditions, or the opinions or constructions of any man or set of men.

Municipal corporations, in the sense of cities are several times mentioned in the constitution. An article, the XII., is devoted to them, but only to prohibit them from becoming subscribers to or owners of stock in any railroad or private corporation. Again, by section 6 of Article IX., the legislature is limited in its power to vest them with the power to make local improvements, etc., and in the section cited by counsel they are guaranteed the right to vote upon the subject of street railways running through their respective streets. But in none of these provisions, nor in any other which the limited time at my command has enabled me to find, is there any indication of the mind of the framers of the constitution or the people who ratified it to guarantee to the voters of cities of any class the right to a voice in choosing their municipal officers.

Section 7 of Article XIII. of the constitution provides for the time of holding the general election for each year, except the one at which said constitution was to be submitted for ratification, and that at such election all state, district, county, precinct, and township officers by the constitution or laws made elective by the people, except school district officers, and municipal officers in cities, villages, and towns, "shall be elected at a general election to be held as aforesaid." This provision recognizes the fact that

all municipal officers which were elective were made so by the legislature, and in my view is to some extent a recognition by the framers of the constitution of the plenary power of the legislature over the subject.

But, to return to the subject of the general spirit of the constitution and of our institutions, I have above stated that it was the general spirit of our constitution and institutions, and in accord with the habits and traditions of our people, that the inhabitants of every subdivision of the state should have an equal share and responsibility in public affairs, so far as the same shall have been found conducive to the public safety, the preservation of the public peace, and the conservation of the public morals. It is, doubtless, the duty of the courts in all proper cases to give full weight and due consideration to the above sources of construction; but courts cannot take judicial notice of the condition of the public safety or the public morals in any class of cities or other locality of the state. These are political matters, for the consideration of the legislative and executive departments. The state is the unit of political power, and is responsible through its legislature and executive for the preservation of the peace, morals, education, and general welfare of the people, and in the discharge of the duties necessary for these purposes they are limited only by the supreme constitution of the government, the laws passed pursuant thereto, and our own constitution and laws.

I therefore reach the conclusion that the provision of the said act making it the duty of the governor to appoint a board of fire and police commissioners for cities of the metropolitan class is not repugnant to the constitution. The application is therefore denied, and the cause dismissed.

JUDGMENT ACCORDINGLY.

THE other judges concur.