STATE OF NEBRASKA, EX REL. FRANK A. KENNEDY ET AL., v. WILLIAM J. BROATCH ET AL.

FILED APRIL 30, 1903. No. 12,916.

1. Power of Legislature: BOARD OF FIRE AND POLICE COMMISSIONERS: APPOINTMENT. The legislature may by statute confer upon the governor the power to appoint members of the board of fire and police commissioners of cities of the metropolitan class. *Redell v. Moores*, 63 Neb. 219.

2. Res Judicata. A judgment, rendered by a court of competent jurisdiction, determining the rights of the litigants on a cause of action or defense, is an effectual bar against future litigation over the same right determined by such judgment, and is for all time, unless reversed or modified, binding on the parties and their privies in estate or in law.

3. ———. A "right, question or fact" distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery, can not be disputed in a subsequent suit between the same parties or their privies, and this even though the second suit is for a different cause of action.

4. ———. The right, question or fact which when put in issue and determined, to become the subject of the rule of *res judicata*, must be a question of fact as distinguished from an abstract proposition of law; and the determination must be with reference to such question or questions of fact, although the decision itself may be a question purely of fact or a mixed question of fact and law or a legal deduction arising from a state of facts common to both actions, as for example a decision construing, as a matter of law, an agreement is binding between the parties and their privies where the same instrument is urged as a ground of recovery or defense in a subsequent suit on a different cause of action.

5. Abstract Question of Law. Abstract questions of law can not be made the subject of litigation. There must be real parties and a *res* in dispute that will become *res judicata* when the litigation is determined. *State v. Savage*, 64 Neb. 684.

6. Quo Warranto. In an action by proceedings in *quo warranto* to try title to an office, the claim or demand on which the judgment of

the court is asked, the subject matter of the controversy, is the right to the office for the term in controversy, and the action is personal as to the parties claiming the office.

7. ———. In such action there is no adjudication or determination of official rights, duties and powers of the person adjudged to be entitled to the office, but solely an adjudication of his right to hold the office for the term in controversy and perform its functions.

8. ———: JUDGMENT. Such an adjudication determining the right of a claimant to an office for a specified term does not determine the right of a successor to the office, holding by appointment from the same authority for a different term; nor is the successor, with respect to the right to the office adjudicated in a prior suit for a different term, deemed in privity with his predecessor; nor is the subject matter the same in the two suits.

9. Interveners. Interveners Peabody and O'Connor *held* to have no valid claim to the office as members of the board of fire and police commissioners for the terms which are in controversy in the present action.

10. Finding and Judgment. *Held*, in the case at bar, that the respondents, appointees of the governor, are the lawfully constituted board of fire and police commissioners of the city of Omaha.

ORIGINAL proceeding in the nature of *quo warranto* to determine the rights of the several parties to office as fire and police commissioners of a city of the metropolitan class. Frank E. Moores, mayor, *et al.* intervene. Dismissed as to relators and interveners. *Judgment for respondents.*

W. J. *Connell* an 1 *James H. Adams*, for relators.

*Carl C. Wright, Frank T. Ransom* and *William F. Gurley, contra.*

HOLCOMB, J.

This action is brought in this court in the exercise of its original jurisdiction, by the filing of an information in the nature of *quo warranto*. The object of the proceeding is to try and determine the respective rights of the relators and the respondents to office as members of the board of

fire and police commissioners of the city of Omaha. The relators' claim of right and title to the office is based on appointments thereto made by the mayor and confirmed by the city council in pursuance of a city ordinance enacted for such purpose. The respondents lay claim to the office by virtue of appointments made by the governor under the provisions of sections 166 and 167, chapter 12a of the Compiled Statutes, 1901 (Annotated Statutes, 7635, 7636), said sections being a part of the charter act passed by the legislature for the government of cities of the metropolitan class to which the city of Omaha belongs. The mayor and city council have intervened in the action, but by their pleadings present no question or issue different from those presented by the pleadings of the respondents and the relators.

The power and authority to appoint members of the board of fire and police commissioners by the governor has been a subject fruitful of much litigation in this court, as is evidenced by the following cases: *State v. Seavey*, 22 Neb. 454; *State v. Moores*, 55 Neb. 480; *State v. Kennedy*, 60 Neb. 300; *Redell v. Moores*, 63 Neb. 219; *State v. Savage*, 64 Neb. 684. All the above cited cases have a bearing either direct or remote on the present controversy and should be referred to for a better understanding of the questions herein presented for consideration and discussion.

The prior litigation as well as the present is directly traceable to a difference of opinion prevailing in respect of the power of the legislature to authorize the appointment of members of the board of fire and police commissioners of the city of Omaha by the governor, as is provided he shall do by the sections of the charter act to which we have referred. It is the contention of the relators and the interveners, the mayor and the city council, as it has been by one of the parties litigant in these several prior cases, that the act authorizing appointments to be made by the governor is unconstitutional and void, as being violative of the principles of "home rule" or the

48

"right of local self government" of the municipalities of the state. But two fundamental questions are presented for consideration in the present action; one being the alleged unconstitutionality of the act referred to, and the other, the question of whether the rights of the parties herein are not to be controlled and determined by the application of the doctrine of *res judicata*. It is insisted that by reason of the matters litigated and the judgments rendered in two of the cases heretofore cited, namely, *State v. Moores* and *State v. Kennedy, supra,* the respondents can not now be heard to assert title and right to the office of which they are the present incumbents.

Regarding the first question presented for our consideration, namely, the alleged unconstitutionality of the act under which the governor appointed the respondents to the office now held and claimed by them, it would serve no useful purpose to again discuss the subject at length. While the act was held unconstitutional in *State v. Moores,* in the more recent case of *Redell v. Moores, supra,* the *Moores* case was overruled and the act held to be within the constitutional powers of the legislature. It would be altogether profitless for us now to enter into a further discussion of the much mooted legal propositions involved, nor do we understand counsel to urge it in more than a perfunctory manner. The *Redell-Moores* case should be accepted as the deliberate expression of the court on this branch of the litigation, and we adhere to the conclusions announced and the principles of law as expressed therein. On this subject the views of a majority of the court as at present constituted are also manifested in the opinion formulated by the present chief justice in the case of *State v. Kennedy, supra.*

Chief reliance for a judgment in favor of the relators in the case at bar is based on the proposition that the judgments rendered and the matters litigated in the two cases, *State v. Moores,* and *State v. Kennedy, supra,* are *res judicata* as to all the parties to this action, and because thereof, irrespective of the question of the constitution-

ality of the act under which the governor appointed the respondents, they are concluded thereby and cannot be heard to assert a right to the office they are now incumbents of by virtue of such appointments. It is to this latter question that counsel have devoted most of their briefs and their oral arguments at the time of submission, and to which we will confine ourselves in the further discussion of the case. It is insisted, if we understand counsel aright, that the judgment in the *Moores* case operates as a bar to the assertion by the respondents of a right to the office they are now holding, and that, because of the adjudication of certain facts therein, they are estopped from contending to the contrary and that this action is by or against the same parties or their privies that were litigants in the two cases mentioned. It is said by counsel for relators that, while it may be true in the *Moores* case that as between the appointees of the mayor and the governor the thing in litigation was the office itself and the title thereto, yet nevertheless the right to the office was not the only point of issue presented or determined; that the question was also determined as to whether the mayor or governor had the right and power to appoint members of the board of fire and police commissioners; also that the act relating to cities of the metropolitan class, authorizing the governor to appoint, was adjudged to be unconstitutional; and further that the ordinance under which the appointment was made by the mayor was a valid ordinance; that all these questions were put in issue by the pleadings in that case, were litigated and determined, and, therefore, have become *res judicata,* binding alike on all parties thereto and their privies.

The pleadings in the several cases are too voluminous to be set forth herein, and we can not give an abstract of them without taking unnecessary time and space. We must content ourselves by stating what we conceive to be the essential features of the pleadings on which the judgment in the action was grounded. In the *Moores* case the **action** was by *quo warranto* begun by the attorney **general**

against the mayor and city council, and the board of fire and police commissioners appointed by the governor. The action was brought for the purpose of determining who were lawfully entitled to hold the office and exercise its functions. The mayor and city council, proceeding upon the theory that the act authorizing the appointment of members of the board by the governor was unconstitutional and void, had passed an ordinance providing for the appointment of such officers by the mayor, with the approval of the city council. The mayor having appointed certain parties to fill the office in pursuance of the provisions of. the ordinance passed for that purpose, who claimed the right to the office, a conflict of authority between the two contending boards was imminent; and, to have a judicial determination as to which of the contending parties was the lawfully constituted board of fire and police commissioners, the action was instituted.

It is not entirely clear to us why the mayor and the council were made respondents in that action, or what precise legal interest they had in the subject matter of litigation; but however this may be, the appointees of the mayor intervened in the action and by proper pleadings set forth their claim and title to the office, as did also the board appointed by the governor. The facts pleaded show conclusively that the appointees of the governor based their rights on such appointments and such further necessary steps as would qualify them for the office; that the mayor's appointees claimed by virtue of the appointment made by the mayor and the necessary succeeding steps to qualify them for the office. It was also averred on behalf of the mayor and city council and their appointees that the act authorizing the appointment of members of the board by the governor was unconstitutional and void. Demurrers were interposed to these several pleadings by the adverse parties, which raised solely questions of law to be determined by the court, on which the decision was grounded. The court held in the *Moores* case that the legislature had exceeded its constitu-

tional powers in conferring upon the governor authority to appoint such officers, and the judgment entered went in favor of the appointees of the mayor, the respondents; the appointees of the governor being ousted from the office. The subject matter of the litigation, the claims and demands of the parties, was with respect to the title of the respective claimants to the office as members of the board of fire and police commissioners. It is true the court, in a sense, determined that the act of the legislature authorizing the governor to appoint was void; that the ordinance passed by the mayor and city council was valid; and that the mayor could rightfully fill the office by appointment. In a legal sense, however, in our view the *res*, the thing actually decided, was that the mayor's appointees were entitled to hold the office and perform its functions for the term for which they were appointed and that adjudication was binding on the parties to the action and their privies. These other questions, especially the one with reference to the validity of the statute, unquestionably influenced the court in pronouncing the judgment rendered, yet, in our opinion, they were not the things adjudicated within the meaning of the rule which is invoked as conclusive of the rights of the governor's appointees in the case at bar. The validity of the ordinance and the right of the mayor to appoint thereunder were dependent upon the alleged unconstitutionality of the act giving the governor power to appoint. The holding of the court on and its determination of these subordinate questions was the natural, logical and legal sequence of its holding on the main legal proposition involved, that is, the power of the legislature to authorize the governor to fill the office by appointment. This latter was the principal and pivotal legal point on which the decision of the controversy hinged. The mayor and the city council, and the appointees of the mayor, could not present under the issues as an abstract proposition the question of whether the city ordinance was valid and the mayor had authority to appoint thereunder. These would

be but moot questions on which the court could only express an opinion and not adjudicate. There must be a *res* in dispute, a subject matter for controversy, and parties to the litigation whose rights the court is called upon to adjudicate, which rights, when once determined, become *res judicata* as between the parties thereto and their privies. It may be, and probably is, true that in a proper proceeding the subject matter of the controversy could be the validity of the ordinance or the right of the mayor to appoint thereunder, which, when determined, would be binding on the parties and their privies under the doctrine of *res judicata;* but such action contemplates that there shall be parties to an action who are claiming and demanding the adjudication of their rights, in the determination of which the validity of the ordinance and its effect on the rights of such parties thus put in issue becomes essentially and actually the *res* in controversy. To illustrate: An injunction might be begun to restrain the enactment or enforcement of an ordinance and thereby determine the rights of a litigant. In such case an adjudication as to the validity of such ordinance would doubtless, as between the parties and their privies, be conclusive in future litigation with reference to the same subject matter. In the case at bar, however, the subject matter of litigation was not the validity of the ordinance, or the right of the mayor to appoint members of the board of fire and police commissioners. What the parties claimed and demanded the judgment of the court on, was the right and title to the office in controversy for the term for which they were appointed, and as a reason for such a demand they invoked of the court the application of certain principles of law, from which the deduction was made that the act authorizing the governor to appoint was unconstitutional, and the citizens of Omaha, as a muncipality of the state, had the undeniable right to select their own officers. The holding of the court on these several questions thus presented was but the expression of an opinion regarding legal principles of an abstract character, to be followed

or departed from in future litigation by the application of
the rule of *stare decisis*. Certainly, if its holding that the
legislative act was unconstitutional would not in subse-
quent litigation regarding a different subject matter be
controlled by the doctrine of *res judicata*, then the sub-
ordinate legal questions involved dependent upon this
main one, could not operate in a different manner or
their scope and effect be extended beyond that of the main
question.   If counsel's contention is correct as to the
scope and extent of the adjudication in the *Moores* case,
then why may it not be said that the case of *State v.
Seavey, supra,* has become *res judicata* of the question
therein determined, binding upon the parties not only
in that action, but upon those in the case of *State v.
Moores,* where the identical question was determined.   In
the *Scavey* case it was decided by a unanimous court that
the legislature was empowered to authorize the governor
to appoint members of the fire and police board of cities
of the metropolitan class.   The principal question for the
consideration of the court in that case was the constitu-
tionality of such a law, and this was the identical ques-
tion determined in the *Moores* case, the judgment in
which it is now urged is an estoppel against those claim-
ing the office by virtue of appointments made by the gov-
ernor.   It may be that the two cases and the questions
decided are not analogous in all respects, and yet the
principle contended for by relators, if sound, might with
equal propriety have been urged when it was sought to
overrule the *Seavey* case, as was done in the case of *State
v. Moores, supra.*   The suggestion is made more for the
purpose of calling attention to what seems to us as the
extraordinary extent to which we are asked to carry the
doctrine of *res judicata* in the case at bar.

If it be conceded, as contended for by counsel for re-
lators, that in the *Moores* case it was determined and
adjudicated that the ordinance under which the mayor
acted was valid and he might rightfully appoint the mem-
bers of the board of fire and police commissioners, and

that such determination should be controlled by the doctrine of *res judicata,* yet, in our opinion, such disposition of these questions would not be conclusive of the rights of the parties to this suit, for the reason that the former controversy was in respect of a different subject matter, a different term of office, than the one now in controversy, and between parties other than those now litigating, and who do not stand in relation to them as privies in estate or in law. The two actions are entirely disconnected, both as to parties and subject matter. It is doubtless true that the judgment in the *Moores* case was and is an effectual bar against further litigation between the same parties or their privies as to the claims and demands therein adjudicated, to wit, the right to the office for which the parties were contending for the term then in dispute, and that question was, by the judgment rendered, forever settled in favor of the appointees of the mayor; but the judgment could not, we think, have the effect, either as a bar or by estoppel by adjudication, to conclude the same or different parties claiming under a different title and for a different term, nor would other appointees, whether of the governor or the mayor, be deemed in privity with those preceding them, who claimed or held the office for another and different term. Our views regarding this particular phase of the controversy will possibly be made clearer by what is hereinafter said.

The diligence of counsel for relators has resulted in the citation of a multitude of decisions on the subject, yet we find none going to the extent contended for, nor any that would warrant us in holding that the parties to the present action are concluded by the judgment in the *Moores* case or the one following, where the doctrine of *res judicata* was applied and held to be controlling in the decision there rendered. *State v. Kennedy, supra.*

The supreme court of the United States, in discussing the doctrine, say:

"The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and

directly determined by a court of competent jurisdiction, as a ground of recovery, can not be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of the rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgment of such tribunals in respect of all matters properly put in issue and actually determined by them." *Southern P. R. Co. v. United States,* 168 U. S. 1, 48.

In an early case, which is frequently quoted by the courts with approval (*Outram v. Morewood,* 3 East (Eng.) 346), it is said in relation to the subject by Lord Ellinborough:

"It is not the recovery but the matter alleged by the party, and upon which the recovery proceeds, which creates the estoppel. The recovery of itself in an action of trespass is only a bar to the future recovery of damages for the same injury; but the estoppel precludes parties and privies from contending to the contrary of that point, or matter of fact, which having been once distinctly put in issue by them, or by those to whom they are privy in estate or law, has been, on such issue joined, solemnly found against them."

It is true that an estoppel by adjudication may arise from a decision of the law as to the legal rights of the parties to the litigation, where the decision is predicated upon a fact or state of facts common to both suits. This principle may perhaps be best illustrated by a citation of

authorities. In *Southern M. R. E. Co. v. St. Paul & S. C. R. Co.,* 55 Fed. 690, it is held that:

"The estoppel arising from a finding in a previous suit between the same parties, is not confined to matters purely of fact, or of mixed fact and law, but extends to a decision of the legal rights of the parties on a state of facts common to both suits, although the causes of action are different."

In the opinion it is said (p. 695) :

"The authorities furthermore show, that the estoppel arising from a finding in previous suit between the same parties, is not confined to a finding upon a question purely of fact, or upon a mixed question of law and fact, but that it extends as well to a decision construing an agreement between the parties, and to a decision which determines the legal rights of the parties on a state of facts common to both suits, although the causes of action are different."

The controversy in the ·case from which we have quoted arose between two railway companies over lands granted by congress in aid of the construction of railways. Each company claimed the right to certain lands by virtue of these land grant acts, and certain steps taken by each of them, respectively, in compliance with the law and for the purpose of earning title to the land. In a prior . suit, in which title to the same lands was in controversy, in determining the respective rights of the contesting parties, the decision went in favor of one of the litigants upon a construction of the laws granting the lands and upon certain facts there in litigation with respect to the location of the proposed lines of railway, the filing of a survey thereof, the construction of certain portions of the roads, and the selection of lands claimed under the grant. The second suit, although on a different cause of action, required an adjudication of title to the same lands as in the first suit, and the doctrine of *res judicata* was invoked and held applicable in the second litigation. It is to be noted that in both actions the subject matter of the controversy was the title and ownership of certain lands, and the

decision of the court as to the ownership upon the facts developed in the first suit was an adjudication of the title, whether as a question of law or of fact or both, which was binding on the parties in the subsequent litigation. In the case of *Baldwin v. Maryland,* 179 U. S. 220, 21 Sup. Ct. Rep. 105, cited by counsel for relator, it was decided that a judgment establishing the liability of the estate of a ward for taxes in a suit by the guardian to restrain their collection is *res judicata* as to that question in a subsequent action by the state against the sureties on the guardian's bond to collect the unpaid taxes. It was also held that the judgment establishing a liability to pay taxes for certain years is *res judicata* as to the liability for the taxes of a succeeding year when the facts affecting the liability are identical in the two cases. Other authorities making similar application of the doctrine of *res judicata* are cited, none of which we think go to the extent contended for by relator in the case at bar.

It must at once, we think, suggest itself to the legal mind that the "right, question or fact," in the legal acceptation of the terms, which, when put in issue and determined, thereby becomes subject to the rule, is necessarily distinguishable from the holdings and expressions of the court with reference to principles of law which, when applied to the facts or thing in litigation, must control in the final disposition of the action and determine the judgment rendered therein. The thing in dispute in the case of *State v. Moores* was the right of the contending parties to the office as members of the board of fire and police commissioners, and it was with reference to this right that the parties demanded the judgment of the court. The mayor's appointees were decided to have a valid title thereto, because the court found and held, as a matter of law, that the act authorizing appointments by the governor was unconstitutional and void, as being in excess of legislative power. This holding, however, and the fact that it controlled in the rendition of the judgment entered in that case, would not be an adjudication

of any "right, question or fact" in issue, such as would bring the holding within the operation of the rule of *res judicata* by estoppel; nor, for the same reason, could it be said, because the issues were found in favor of the mayor and the judgment rendered proceeded on the theory that the ordinance under which the appointments were made was valid, that such decision would have any greater effect than the holding of the court on the principal controverted proposition of law which was involved. In *State v. Savage*, 64 Neb. 702, 705, this court has said:

"Abstract questions of law can not be made the subject of litigation. There must be real parties, and a *res* in dispute that will become *res judicata* when the litigation is ended. * * * In the determination of a case legal principles are invoked, and the conclusion of the court thereon announced. Whether such conclusion shall be followed, without further investigation in subsequent litigation, frequently depends upon principles of *stare decisis.* * * * The thing determined by the litigation becomes *res judicata,* and can not be afterwards questioned between the parties, although the rule of law by which the decision was controlled is afterwards found to have been incorrectly applied, and such application is no longer binding upon the court."

In the case of *State v. Kennedy, supra,* the action was by *quo warranto,* and again presented to the court for its consideration the constitutionality of the act passed on in the *Moores* case, and there was also presented by the issue made up in that case the question of whether the judgment in the *Moores* case and the matters therein adjudicated were not, as to the parties then contending for the office, *res judicata.* Without making any authoritative announcement with reference to the first question presented, the court decided the *Kennedy* case in favor of the respondents, who were holding the office by appointment from the mayor, on the plea of a former adjudication presented by their answer to the information filed by the attorney general. The principal question in that action

discussed in the arguments of counsel and considered by
the court was with reference to the right of the state, after
it had invoked the jurisdiction of the court in the *Moores*
case by an action in *quo warranto*, to again be heard to
question the title of the respondents to the office adjudged
in their favor in the first action.    Counsel for relators and
those claiming by appointment of the governor contended
quite earnestly that, because the state was acting in its
sovereign capacity in respect of the appointments made
by the governor, the right adjudicated in the *Moores* case
against it was not binding in subsequent litigation, and
that the doctrine of *res judicata* was not, therefore, ap-
plicable, and could not be invoked as in the case of or-
dinary suitors.    In the opinion it was held, and to our
minds correctly, that the state was bound as any other
litigant by such decision, whether it be favorable or ad-
verse to it.    The question was also discussed in regard to
the privity existing between public officers holding by the
same title, and it was held that one deriving his authority
from the same source as his predecessor is in privity with
him, and that a judgment against a public officer in regard
to a public right would bind his successor in office.    The
correctness of the statements contained in these proposi-
tions can not, we think, be seriously questioned.    It was
not, however, absolutely essential to the decision ren-
dered in that case to determine whether one holding a
public office by appointment was in privity with his pre-
decessor, deriving title from the same authority; the ques-
tion of the right to the office being the only thing de-
termined by the prior litigation.    At the time of the in-
stitution of the suit and the rendition of the judgment in
the *Kennedy* case, those made respondents, or a majority
of them, were holding the office for the same term and by
the same appointments, the right to which was adjudged
in their favor in the prior case of *State v. Moores, supra*.
The identical title and right to the office the court was
asked to determine in the latter suit had been adjudicated
in favor of respondents in the former.    The term of office

of members of the board of fire and police commissioners
is by statute limited to four years, the term of one mem-
ber expiring each year.   Notwithstanding the fact that
the terms of the different members expire at different
periods, during the whole course of the litigation over
the subject of appointments and the right to the office, all
have been treated and regarded not only as holding by the
same authority, but for terms of the same duration and
expiration of time.   The respective claimants and con-
testants have joined together in a common cause of action
or a common defense; and in the oral arguments we were
asked to dispose of the case at bar in this same way.   It
is conceded by all parties in interest that the terms of
office of each member, the title to which was under con-
sideration in both the *Moores* and the *Kennedy* cases, have
now expired, and that all save one had expired at the
time of the commencement of the present action.   Assum-
ing, then, that the relators' claim of right to the office by
virtue of appointments made by the mayor is for a differ-
ent term from the one in controversy and adjudicated in
the two prior actions, will those judgments operate as a
bar or an estoppel against the respondents who claim by
virtue of appointments made by the governor?   Do the
present appointees of the mayor claim under the same
title as that adjudicated in the prior actions, and are
they, in a legal sense, as respects such title, in privity with
their predecessors in office?   It can not, we think, be said
that the respondents in the present action claim under
the same right and title as their predecessors.   It is true
they both derive their authority and right to the office
from the same source, but there has been no transfer of
the title held by their predecessors to them.   Each claims
by an independent title derived from one and the same
authority for a different term of office.   The adjudication
as to the the rights of the parties for the terms for which
they were appointed, whether right or wrong, became
final and operated as a complete bar against the other con-
tending parties ever afterwards from asserting title to

such office for the term then in controversy, but the rule of *res judicata* can not, we think, without going to an unwarranted length, be extended any further.   It can not be said that because of such decision the court is irrevocably bound for all time to construe the statute unconstitutional, as held in the *Moores* case, nor that the appointees of the mayor under the ordinance enacted by the city council who are holding under a different tenure, merely because they are successors of the parties to the original litigation, can invoke the doctrine against the appointees of the governor, who are likewise holding for a different term from that involved in the prior litigation. To sum up, we are of the opinion that the thing adjudicated in the *Moores* case and which was held to as an adjudication in the *Kennedy* case was the right and title of the mayor's appointees to the office for and during the term for which appointed, and that when such terms have expired and other appointments are made by both the governor and the mayor, the court is at liberty to determine the respective rights of the contesting parties according to their lawful rights, not by the application of the doctrine of *res judicata,* but on principle and authority.

It is to be observed that both the judgments relied on as concluding the governor's appointees in the present litigation were rendered in actions or proceedings in *quo warranto,* the objects and purposes of which were to try the title and determine the rights of the contending parties to the office as members of the board of fire and police commissioners for a particular and specified term.   The adversary parties in those actions were litigating as individuals and not as officials.   The actions were not by or against officers in an official capacity for the purpose of establishing some official power, right, duty or obligation attaching to a public office, or pertaining to the duties of a public official as such.   The litigation was for the purpose of determining who were entitled to hold the several offices and discharge their functions for the term involved, and in no manner affected the manner or method of discharging offi-

cial functions, or established any duty or responsibility resting on the incumbent of the office by reason of his official character. Both contending parties asseverated that their opponents were not officers and were not entitled to the office. As stated by a text writer in discussing the nature of the proceedings and of the writ of *quo warranto*:

"Nor does it [the writ] command the performance of his official functions by any officer to whom it may run, since it is not directed to the officer as such, but always to the person holding the office or exercising the franchise, and then not for the purpose of dictating or prescribing his official duties, but only to ascertain whether he is rightfully entitled to exercise the functions claimed." High, Extraordinary Legal Remedies (3d ed.), sec. 604.

The supreme court of Wisconsin, speaking of a *quo warranto* proceeding, say:

"It is foreign to the objects and functions of the writ of *quo warranto* to direct any officer what to do. It is never directed to an officer as such, but always to the person—not to dictate to him what he shall do in his office, but to ascertain whether he is constitutionally and legally authorized to perform any act in, or exercise any functions of the office to which he lays claim." *Attorney General v. Barstow*, 4 Wis. 567, 803.

This distinction is material, and should be borne in mind, in order that the case at bar may not be confused with those cases which rightly hold that a judgment against a public officer in regard to a public right binds his successor in office, and that such officers are regarded as being in privity with their predecessors when they derive their authority from the same source. In *State v. Smyth, supra,* in announcing this rule of law, the court cited with approval the case of *Holsworth v. O'Chander,* 49 Neb. 42. In that case the controversy was with respect to the rights, duties and powers of a road overseer whose predecessor, in his official capacity had been, in a proper action, restrained from interfering with an alleged high-

way.  It was held that a judgment upon the merits against the overseer was a bar to a subsequent proceeding by a successor in office of the former overseer, where the rights of the parties depended upon the facts put in issue in the first suit.  Other authorities, in abundance, of like tenor, might be cited, but the one mentioned is deemed sufficient. The present action, in its relation to the two former judgments which are pleaded in bar or as an estoppel, and the matters therein litigated, does not fall within the rule laid down in the *O'Chander* case and other like authorities.  We are in the present action to determine the rights of the parties herein uncontrolled by the judgments in the *Moores* and *Kennedy* cases, because the subject matter is not the same and because the parties are not the same; nor are they, in respect of the matter therein litigated, in privity with their predecessors who held under a different appointment and for a different term.

Entertaining, as we do, the opinion that the case of *Redell v. Moores, supra,* is a correct exposition of the law in respect of the validity of the act authorizing the governor to appoint, and that the judgments in the *Moores* and *Kennedy* cases are not conclusive as to the rights of the governor's appointees as against the relators and the interveners, the mayor and the city council, it follows that the respondents, who claim by virtue of appointments made by the governor, are lawfully entitled to the office, and should have judgment in their favor; and that the action begun by the relators and the petition of the interveners, the mayor and city council, should be dismissed.  The interveners Peabody and O'Connor, who were appointed by the governor as members of the board prior to the judgment in the *Kennedy* case, and who were parties to that action, claim title to the office by virtue of such appointment.  The judgment in the *Kennedy* case went against them, and that judgment has become final. That judgment was adverse to them as to their right to the office for the identical term they are now contending for.  Furthermore, the term of office to which they assert

title has expired, and consequently no judgment in any event could be entered in their favor. Their petition of intervention is therefore dismissed. Judgment will be entered in this court in conformity with the views hereinbefore expressed.

JUDGMENT FOR RESPONDENTS.

SEDGWICK, J.

If the constitutionality of the statute making it the duty of the governor to appoint a board of fire and police commissioners for the city of Omaha is conceded, the conclusion that these relators are not entitled to the writ asked for seems to follow. The majority of the court adheres to the ruling in *Redell v. Moores,* 63 Neb. 219, upholding the validity of the statute.

It is suggested in relators' briefs that each member of the court ought to "carefully consider this question and review the authorities bearing upon it." This duty is fully appreciated, but other and more pressing duties are allowed to supersede it for the present, not because the importance of the question in the jurisprudence of the state is disregarded, but, rather, because its immediate discussion could not be productive of any practical results, and therefore it ought not to be allowed to interfere with other duties that can not be postponed.