STATE, EX REL. FRANK N. PROUT, ATTORNEY GENERAL, V.
THOMAS J. NOLAN ET AL.

FILED FEBRUARY 17, 1904.    No. 13,327.

1. **Quo Warranto:** ANSWER. An answer to a petition in quo warranto,
which alleges that the respondents are holding the office in ques-
tion by lawful appointment, under the provisions of a legislative
act, and which sets forth the facts in relation thereto, is sufficient
to put the validity of such act in issue.

2. **Legislative Act:** CONSTITUTIONALITY. A legislative act should not
be declared unconstitutional, unless it is so clearly in conflict with
some provision of the fundamental law that it can not stand.

3. **Police Commissioners:** APPOINTMENT. The legislature may, by stat-
ute, confer upon the governor the power to appoint the board of
fire and police commissioners for cities of the first class.

4. **Statutes:** REPEAL. Where general and special provisions of a stat-
ute come in conflict, the general law yields to the special with-
out regard to priority in dates, and a special law will not be re-
pealed by general provisions, unless by express words or by
necessary implication.

5. ——: CONSTRUCTION. The several sections and provisions of a
legislative act should be construed together, and harmonized if
possible; and, if there is a conflict in them, general expressions
must give way to special and specific provisions.

6. **City Charter:** VALIDITY. That part of the charter of South Omaha,
providing for the election and defining the jurisdiction of the
police judge, is separable from the rest of the act, and, if neces-
sary, may be rejected without affecting the validity of the charter.

7. **Fire and Police Board:** LEGALITY. *Held,* That the respondents are
the lawfully constituted board of fire and police commissioners of
the city of South Omaha.

ORIGINAL application in the nature of quo warranto to
determine the rights of respondents to office as fire and
police commissioners of a city of the first class. *Writ
denied.*

*Frank N. Prout, Attorney General, Norris Brown,
Smyth & Smith* and *A. H. Murdock,* for relator.

*F. A. Brogan* and *James H. Van Dusen, contra.*

**Barnes, J.**

This original action in quo warranto was commenced by the attorney general for the purpose of testing the validity of chapter 17 of the laws of 1903, otherwise known as the South Omaha Charter, and more particularly that part of the act which provides for the appointment of a board of fire and police commissioners. To that end a petition was filed against the respondents, Thomas J. Nolan, A. L. Bergquist, William B. Van Sant, Alfred A. Nixon and George W. Masson, praying that they be required to show by what warrant or authority they assumed to act as fire and police commissioners of the city of South Omaha, and claimed to hold such public office. To this petition the respondents filed an answer, which was demurred to by the relator. Thereafter, by permission of the court, an amended answer was filed, in which respondents properly justified under the provisions of the act in question. The demurrer was not refiled but, it having been treated as though it applied to the amended answer, we will consider it as refiled, and thus the validity of that part of the act under which the respondents were appointed, and now hold their office, is put in issue. The act in question is chapter 17 of the laws of 1903 (Compiled Statutes, ch. 13, art. II), and will be hereinafter referred to as the charter.

It is stated in relator's brief that the answer is insufficient in form and substance, but, the amended answer having been filed after that part of the brief was written, and the defects of the original answer, if any, having been cured thereby, it is unnecessary to devote any further time to the pleadings, so we come at once to the consideration of the question of the validity of the charter. It may be stated at the outset that we should not declare a law void for slight and trivial reasons, but, if possible, sustain the legislative will. So, in the examination of this question, we will be governed by the rule, that a legislative act will not be declared unconstitutional, unless it is so clearly in

conflict with some provision of the fundamental law that it can not stand.

Section 63 of the act provides for a board of fire and police commissioners to consist of five electors of the city, appointed by the governor. It also makes specific provisions as to when and how the appointments shall be made, and term of office; it also defines the qualifications of members of the board, together with the powers and duties of that body; and the relator's attacks are particularly directed to this part of the charter. The general question relating to the constitutionality of such legislation has been before us several times. In the case of *State v. Broatch*, 68 Neb. 687, the validity of such a provision was the question before the court. The Omaha charter, which was in question in that case, provides for the appointment of a board of fire and police commissioners by the governor, and its validity was attacked by a proceeding in quo warranto. It was held:

"The legislature may by statute confer upon the governor the power to appoint members of the board of fire and police commissioners of cities of the metropolitan class"; citing *Redell v. Moores*, 63 Neb. 219. These cases clearly overrule all of the prior decisions of this court holding a contrary doctrine, and so, it may be considered as the settled law of this state that the section in question is constitutional, so far as that phase of the controversy is concerned. Again, it is apparent, from an examination of the whole act, that it was the purpose of the legislature to substantially reenact the charter of 1901 under which the city was conducting its affairs at the time the new charter was passed, with only such changes and amendments as would place the fire and police department of the city under the control of a board to be appointed by the governor of the state, instead of a board appointed by the mayor, and confirmed by the city council. It is clearly the duty of the state, in the exercise of its police powers, to maintain peace and good order, and protect the welfare of its citizens wherever they may be found within its borders.

And whenever it appears that any of its municipalities are, for any reason, unable to maintain such conditions of security and good order, it is proper for the legislature to enact such laws as will accomplish that end. Of late, it has been quite generally recognized that there are conditions existing in some of our cities, growing out of the appointment and management of their police departments, with which the local authorities are unable to successfully cope; and that an independent board, created by an authority entirely removed from, and in no way influenced by, local conditions, can best conserve the interests of the public in those matters. That policy first found expression in the Omaha charter of 1887, and was the subject of much litigation, and some conflicting decisions, until the principle was finally and firmly settled in the case of *State v. Broatch, supra.* And so, the legislature, in order to adopt this policy, reenacted the old charter with the changes above mentioned, and, in so doing, we are satisfied that it did not exceed its legitimate powers; if the legislature has attempted to go beyond its powers in authorizing this commission to control matters purely local, such provision might be held invalid, without rendering the whole act unconstitutional.

It is claimed, however, that section 63, in so far as it defines the powers and duties of the board, is in direct conflict with subdivision 78 of section 128 of the charter. This is one of the subdivisions of the section conferring general powers upon the municipality, and is as follows:

"In addition to the powers herein granted, cities governed under the provisions of this act shall have power by ordinance: To provide for the organization and support of a fire department; to procure fire engines, hooks, ladders, buckets, and other apparatus, and to organize fire engine, hook and ladder, and bucket companies, and prescribe rules of duty and the government thereof, with such penalties as the council may deem proper, not exceeding one hundred ($100) dollars, and to make all necessary appropriation therefor, and to establish regulations for the

prevention and extinguishment of fires." And it is con-
tended that this subdivision must prevail because it was
passed last in point of time, or, in other words, appears
last in position in the charter. This, it is insisted, works
a repeal of section 63, by implication. Repeals by implica-
tion are not favored, and the courts will not declare them
unless compelled to do so. And where there is a conflict
between two sections of an act, one being a reenactment of
a former provision, and the other a new provision inserted
in the law as reenacted, the latter will stand because it
is the latest expression of the legislative will. Sutherland,
Statutory Construction (1st ed.), p. 210, sec. 156; p. 216,
sec. 161; Endlich, Interpretation of Statutes, sec. 183;
*Graetz v. McKenzie*, 3 Wash. 194; *Winn v. Jones*, 6 Leigh
(Va.), 74; *Congdon v. Butte Consolidated R. Co.*, 17
Mont. 481; *Powell v. King*, 78 Minn. 83. But it is by no
means certain that there is an irreconcilable conflict be-
tween the provisions of section 63 and the subdivisions and
sections pointed out by the relator. Section 8 of the char-
ter, which declares in a general way by whom the corporate
powers shall be exercised, reads as follows:

"Each city governed by the provisions of this act shall
be a body corporate and politic, and shall have power:
First, to sue and be sued; second, to purchase and hold real
and personal property for the use of the city, and real
estate sold for taxes; third, to sell and convey any real
and personal estate owned by the city, and make such
order respecting the same as may be deemed conducive to
the interests of the city; fourth, to make all contracts and
do all other acts in relation to the property and concerns
of the city necessary to the exercise of its corporate and
administrative powers; fifth, to exercise such other and
further power as may be conferred by law. The powers
hereby granted shall be exercised by the mayor and city
council of such city, as hereinafter set forth, except when
otherwise specially provided." Bearing in mind the ex-
ception above quoted, the rule that the several sections of
the charter must be construed together and harmonized, if

possible, and the further rule that, where there is a seeming conflict between the several provisions of a legislative act, general expressions must give way to special and specific provisions, it is quite possible that the board and council may properly conduct the government of the city without serious conflict of authority.

It is also contended that the provision giving power to the governor to remove members of the board for misconduct in office is in conflict with section 84, which apparently gives the same power to the district court. If this be true it is not sufficient ground for declaring the whole act void, for that provision can be expunged from the charter, and it will still be so complete as to furnish ample authority for the proper government of the city.

It is further contended that the charter must be declared unconstitutional and void, because of its provisions relating to the election of the police judge and his jurisdiction. This contention can not be maintained. This question was under consideration and was settled in *Moores v. State*, 63 Neb. 345, and *State v. Moores*, 70 Neb. 48, where it was held that the provisions of the constitution creating a police judge in municipalities were self-operating, and that, in the absence of valid enactments in the charter providing for their election, they could properly be elected at the regular biennial elections.

Lastly, it is claimed that there are many other conflicting provisions in the various sections and subdivisions of the charter. Under the rules above stated nearly, if not quite, all of these apparent conflicts can be reconciled, and the irreconcilable ones, if any, are not of sufficient importance to invalidate the act. But none of these matters require our consideration. The only question involved in this action, in its present form, is the validity and the constitutionality of that part of the charter under which the respondents hold their office, and, as we have seen, that part of the act is valid. This action only tests the right of respondents to hold the office in question, and can not be used for the purpose of restraining a public officer, or

person exercising a public franchise, from doing any particular act or thing, the right of doing which is claimed by virtue of such office or franchise, and which constitutes a portion, only, or an integral part, of the rights, powers and privileges incident thereto. High, Extraordinary Legal Remedies (3d ed.), sec. 636; *State v. Evans,* 3 Ark. 585, 36 Am. Dec. 468; *People v. Whitcomb,* 55 Ill. 172.

The charter being valid, and the respondents having shown by their answer that they are holding the office in question by legal appointment thereunder, that they have qualified and are exercising the functions of their office, it follows that the relator is not entitled to the writ of ouster. The demurrer to the answer is overruled, the writ denied, and the action dismissed at the costs of the relator.

WRIT DENIED.