STATE OF NEBRASKA, EX REL. CONSTANTINE J. SMYTH, ATTORNEY GENERAL, v. FRANK A. KENNEDY ET AL., RESPONDENTS, AND WILLIAM J. BROATCH ET AL., INTERVENERS.

FILED JUNE 7, 1900.  No. 11,226.

1. **Res Adjudicata**: SOVEREIGNTY. When a state invokes the judgment of a court for any purpose, it lays aside its sovereignty and consents to be bound by the decision of the court, whether such decision be favorable or adverse.

2. **Courts**: SOVEREIGN POWER. Courts possess a portion of the sovereign power; they are authorized by the constitution to decide between litigants; and authority to decide implies, always, power to make their judgments effective.

3. **Public Officer**: PRIVITY: PREDECESSOR. A public officer is regarded as being in privity with his predecessor when both derive their authority from the same source.

4. **Judgment**: REX NUNQUAM MORITUR. A judgment against a public officer in regard to a public right binds his successor in office.

5. **Disrespectful Brief**. Briefs containing matter disrespectful to the court will be stricken from the files.

ORIGINAL action in the nature of a quo warranto asking for judgment of ouster against the fire and police commissioners of the city of Omaha. *Writ denied.*

*Constantine J. Smyth, Attorney General,* and *Willis D. Oldham, Deputy,* for the state.

*Frank T. Ransom, Wright & Stout* and *Ed P. Smith,* for the interverners Broatch, Miller, Peabody and O'Connor:

The ordinary rules of *res adjudicata* do not apply; (a) Because *res adjudicata* and estoppel by judgment can not

be pleaded against the state appearing in its sovereign capacity; (*b*) because the decision against the state in quo warranto actions is not final and conclusive. It is obnoxious to the very idea of sovereignty that estoppel or *res adjudicata*, or the statute of limitations can be applied. The court will find the rule stated in many cases, that the state can not be estopped; and it will find the contrary rule laid down, in general terms, that the state will be bound by adjudications as any other litigant. Neither rule, stated in its broad terms, is correct; but an examination of the cases which support either rule discloses the fact that those cases which have applied the doctrine of estoppel or *res adjudicata* to the state have been cases in which the state has been seeking to enforce its contract or property rights, rights growing out of or relating to its corporate capacity. So far as we are able to find, not a single case in the United States has ever held that the state could be estopped in matters relating to its sovereignty. In the case of *United States v. State Bank*, 96 U. S., 30, 36, Justice Swayne clearly points out the distinction. He says, in substance, in these cases (where negotiable paper was involved) the rules of law applicable to the individual were applied to the United States, and that the doctrine of estoppel was correctly applied in those cases, because the action related to matters pertaining to their corporate capacity. He then adds: "Their sovereignty is in nowise involved." The same doctrine has been recognized in *Fendall v. United States*, 14 Court of Claims [U. S.], 247; *Hunter v. United States*, 5 Pet. [U. S.], 173; *Johnson v. United States*, 5 Mason [U. S.], 425.

In all criminal actions, the state, of course, appears in its sovereign capacity. But there can be no plea of estoppel or *res adjudicata*. This is recognized by the common law and by nearly every constitution in the United States, because by the common law it is established that no man should be put in jeopardy twice; and like provision is found in all the constitutions, except those states in which a common law rule has been held to

State v. Kennedy.

apply. If the ordinary doctrines of estoppel and *res adjudicata* had applied against the state in the criminal action, there was no need of the express provision of the English law that a man should not be twice put in jeopardy. If the doctrine of *res adjudicata* or estoppel had applied to the state appearing in its sovereign capacity, there would have been no need of the special provision in the constitution of this country which provides that no man shall be put in jeopardy twice for the same offense, but these provisions would have been meaningless and useless incumbrances to the constitution. This is a special limitation upon the rights of sovereignty, and it is contained in the special provision limiting the sovereignty. It is not, however, extended to actions in the nature of quo warranto.

*W. J. Connell*, for the respondents and for the mayor and city council of Omaha:

*Res adjudicata* rules the state the same as the citizen. No plea of *res adjudicata* in criminal actions? True, if you condescend to quibble. And it is also true that in civil actions there is no plea of former jeopardy or *autrefois acquit*. In the criminal court the judge discharges the prisoner because *Nemo debet bis puniri pro uno delicto,*\* and in the civil court he bids the defendant go without day because *Nemo debet bis vexari pro una et eadem causa.*† Both the pleas and the maxims are one and the same thing in substance and principle, each being clothed in the language peculiar to the special tribunal in which it is used. *State v. Bchimer*, 20 Ohio St., 576; Wharton, Pleading & Evidence, 574.

*McCoy & Ohmsted*, as *amici curiæ*, filed a brief against the granting of the writ.

SULLIVAN, J.

This action was evidently instituted to secure a decision

---

\*No one ought twice to be punished for the same offense.
†No one ought twice to be vexed for one and the same cause.

overruling the case of *State v. Moores*, 55 Nebr., 480.   The
*Moores Case* lays down the doctrine that whatever the
court may conceive to be the spirit of the constitution
is to be regarded as part of the paramount law.   While
the decision, by recognizing and enforcing the asserted
right of local self-government, is conceded to rest upon
a sound political principle, it was rendered by a divided
bench and, as a judicial pronouncement, has been much
criticised.   If it is to be acquiesced in and accepted as
a rule of construction, the constitution of the state is to
be fully known, only, by studying the theories of the
judges who are chosen to expound it; it will expand or
contract with every fluctuation of the popular will which
produces a change in the personnel of the court; and the
limitations upon legislative power will be as unknown
and unknowable as were the rules of equity in the days
when the chancellor's conscience was the law of the land.
It is the opinion of the writer that the decision is
thoroughly vicious; that it strikes a lethal blow at a co-
ordinate branch of the government and ought to be re-
pudiated and condemned.   But since the members of the
court who participate in this decision are not in accord
upon the question of constitutional law here involved,
further discussion of that question is unnecessary, and
would be unprofitable.   There is another point in the case
upon which we are agreed and which is decisive of the
controversy.   The judgment must be in favor of the re-
spondents whether the ordinance under which they claim
is valid or void.

Briefly stated, the facts in the case of *State v. Moores*
were these: Acting under the provisions of sections 166
and 167 of chapter 12a, Compiled Statutes of 1897, which
conferred, or assumed to confer, upon him authority to
appoint fire and police commissioners for cities of the
metropolitan class, Governor Holcomb appointed James
H. Peabody, D. D. Gregory, William C. Bullard and
R. E. L. Herdman as fire and police commissioners for the
city of Omaha.   The persons so appointed duly qualified

and entered at once upon the discharge of their official duties. Afterwards there was filed in this court by the state, on the relation of the attorney general, an application for a writ of quo warranto against the governor's appointees, the purpose of the action being to obtain an adjudication upon the validity of the sections of the statute under which they had been commissioned. While this action was pending the mayor and council of Omaha provided by ordinance for a board of fire and police commissioners and appointed respondents herein, Matthew H. Collins and Victor H. Coffman, together with two other persons, namely, Peter W. Birkhauser and Charles J. Karbach, to act as members of such board. The persons so appointed by the city authorities intervened in the action and asserted their claims. They contended that the ordinance under which they had been commissioned was valid, and that the statute under which Peabody, Gregory, Bullard and Herdman had been appointed was void. The cause was regularly submitted for decision, and the court, upon due consideration, decided that the ordinance was valid and that sections 166 and 167 of the city charter, so far as they assumed to confer upon the governor authority to appoint fire and police commissioners, were contrary to the scope and purpose of the constitution and, therefore, void. By the judgment rendered the appointees of the governor were declared to be intruders and were ousted from the offices which they held, and the appointees of the mayor and council were installed in their places. This judgment was executed, and it is still in force. The case now before us was commenced during the present term of the court. It also is an information in the nature of a quo warranto, whereby the state, on the relation of the attorney general, demands of the respondents, who are members of the board of fire and police commissioners of Omaha, holding under the authority of the mayor and council, an exhibition of the authority under which they are assuming to act. After the cause was pending, Gov-

ernor Poynter, acting on the assumption that sections 166 and 167, aforesaid, are not in any respect violative of the supreme law, appointed James H. Peabody, William J. Broatch, Harry C. Miller and John J. O'Connor as members of the board of fire and police commissioners for the city of Omaha. Those persons have intervened in the action and filed a pleading in which they assert their claims to the offices held by the respondents. So it appears that we are again called upon to adjudicate between the appointees of the governor and the appointees of the mayor and council the identical matters which were adjudicated in the first case.

One of the defenses interposed by the respondents is that the judgment in the *Moores Case*, whether right or wrong, is binding and conclusive upon the parties to this litigation. Counsel for the interveners, on the other hand, contend that while the doctrine of *res adjudicata* applies to ordinary suitors, it has no application to a sovereign state. The question thus raised is an important one and we have given it careful consideration, reaching the conclusion, after much reflection and thorough investigation of the authorities, that when a state invokes the judgment of a court for any purpose, it lays its sovereignty aside and consents to be bound by the decision, whether such decision be favorable or adverse. While the state as a political community is not obliged to submit to the jurisdiction of its own courts, it ought, in reason and justice, to be bound whenever it voluntarily appears in court and without reservation submits a matter in controversy for adjudication. The courts possess a portion of the sovereign power; they have authority to decide between litigants; and authority to decide implies, always, power to make their judgments effective. It is said by Mr. Justice White in *New Orleans v. Citizens Bank*, 167 U. S., 371, 399, that "the very essence of judicial power is that when a matter is once ascertained and determined it is forever concluded when it arises again under the same circumstances and conditions

between parties or their privies." It is claimed by counsel for the interveners that there is a distinction between the effect of a judgment for or against a state, when appearing as a suitor in its corporate capacity, and the effect of a judgment upon a matter pertaining to its sovereignty. The authorities, excepting perhaps *State v. Cincinnati Gas Light & Coke Co.*, 18 Ohio St., 262, give no countenance to the claim. In 7 Comyns' Digest, title "Quo Warranto," 201, it is said: "The judgment in quo warranto is final; for it is in the nature of a writ of right. And, therefore, if judgment be against the king, the king shall be forever bound as to the thing adjudged." In 3 Blackstone's Commentaries, p. 263, the author says: "The judgment on a writ of quo warranto (being in the nature of a writ of right) is final and conclusive, even against the crown." "And such substantially," said Lewis, P., in *Shumate v. Fauquier County*, 84 Va., 574, "is the effect of a judgment in the more modern proceeding by information in the nature of a quo warranto." In *McClesky v. State*, 4 Tex. Civ. App., 322, 23 S. W. Rep., 518, which was a proceeding by information in the nature of a quo warranto to dissolve the incorporation of a town, it was held that a former judgment in favor of the respondents in a similar proceeding was, under the doctrine of *res adjudicata*, binding and conclusive on the state. *People v. Holladay*, 93 Cal., 241, 27 Am. St. Rep., 186, was an action by the state, on the relation of the attorney general, to abate an alleged nuisance caused by the erection of fences and construction of buildings upon Lafayette Park in the city of San Francisco. It had been previously determined in an action between Holladay and the city and county of San Francisco that the property in question was not public ground, and the determination was held to be conclusive upon the state, it having been represented in the first cause by the municipality, which was a public agent acting within the scope of its authority. In delivering the judgment of the court De Haven, J., said, p. 248: "The city and county

of San Francisco is a municipal corporation created by the legislature of the state, and has conferred upon it by the state full power and jurisdiction over the public squares within its territorial limits, with the right to sue and be sued, and this necessarily includes the authority to maintain and defend all actions relating to its right to subject to the public use such squares or land claimed by it to have been dedicated for such purposes; and in any action brought by it for the purpose of vindicating and protecting the public rights in such squares, or land claimed as such, the state would be bound by the result, because in such action the city and county would in fact represent the people of the state by virtue of the authority given it to maintain such actions for the purpose of preserving the public rights of which it is the trustee." And further along in the opinion this language is used: "The rule that the citizens shall not be twice vexed for the same cause of action is as binding upon the state as upon other litigants; and the legislature, in conferring upon the city power to maintain and defend in the courts the rights of the state to streets and squares within its limits, must be presumed to have done so with reference to this well known maxim, and to have intended that the state should be bound by the result of such litigation." This decision is a direct authority against the contention of counsel for the interveners, for it is a case in which the state went into court to enforce its laws and vindicate the rights of the public to use and enjoy what was claimed to be a public park. To the same effect is *People v. Smith*, 93 Cal., 490, which was an action to abate a nuisance upon land alleged to be a public street. The controversy, of course, pertained to the sovereignty of the state, but the state was, nevertheless, held to be affected by the doctrine of *res adjudicata*. The principles which controlled the California decisions are precisely the same as those which governed the decision in the case of *Holsworth v. O'Chander*, 49 Nebr., 42. The last named case is really decisive of the question which

we are now considering. The essence of the decision is that a judgment against a public officer in regard to a public right is, under certain circumstances, binding upon the public; and that such officer is in privity with his predecessor. We reproduce here a portion of the opinion: "We can not upon this record doubt that the judgment here pleaded would have been a complete bar to a subsequent proceeding by Barnes, the plaintiff's predecessor, in his official capacity to restrain the further interference by defendant's grantor with the alleged highway. The acts charged as the basis of the former action, and the interposition therein by the overseer named of his official character in justification was but the assertion, in behalf of the public, of a public right, by its accredited representative, acting within the scope of his authority. It was, in legal effect, an act of the public, not as a body corporate it is true, but according to its more comprehensive definition, which includes the people or community at large, without regard to the territorial limits of any town or county. The public is, in that enlarged sense of the term, a distinct legal entity, capable of acquiring rights by adverse use; and it may in turn lose such rights by nonuser. It was in that sense privy to the claim asserted in its behalf, and is accordingly concluded by the adverse result." The overseer of highways, against whom the first judgment was rendered, represented the state; he was acting in his official capacity and within the scope of his authority; and the judgment was binding upon his successor who, in relation to the matter in dispute, was exercising a portion of the sovereign power. The second overseer derived his powers from the state; he did not derive them from his predecessor; and he was bound and his authority limited only because the state was bound and its authority limited by the first judgment in favor of O'Chander. Quite like the case of *Holsworth v. O'Chander* is the recent case of *O'Connell v. Chicago T. T. R. Co.*, 184 Ill., 308, 56 N. E. Rep., 355, in which it was held that a judgment against a public corporation binds

the public.  In the case of *State v. Moores, supra,* it was decided that the state, acting through its governor, could not appoint fire and police commissioners for Omaha. That judgment is conclusive upon the state and, as a matter of course, is binding upon the governor and those claiming through or under him.

One other matter calls for a passing notice.  The original brief of counsel for respondents conveyed quite plainly his apprehension that political considerations might be a factor in the decision of the case.  No judge conscious of his own integrity will listen to such suggestion.  No self-respecting court will tolerate an argument which proceeds on the assumption that the goad and spur are necessary to compel it to discharge honestly its constitutional duty.  We know, as well as counsel, that the supreme and inexorable obligation of a court to truly interpret the will of the lawgiver has no possible relation to questions of party expediency.  It is surely not necessary to instruct us as to that.  We believe thoroughly in the rectitude of our own intentions; we feel sure of the inflexibility of our purpose to administer justice uninfluenced by considerations of party advantage; and we will not permit counsel to deal with us on the theory that we may perhaps be contemplating a betrayal of our trust.  Whatever may be the effect of our decisions upon party interests, we shall still resolutely endeavor to act in obedience to the maxim, *Fiat justitia ruat cœlum,* and it will not be necessary for counsel to point out that it is the duty of the court to do its duty.  The offensive brief has been stricken from the files.  *Kelley v. Boettcher,* 27 C. C. A., 177, 82 Fed. Rep., 794.  The application for a judgment of ouster against the respondents is denied.

JUDGMENT ACCORDINGLY.

Upon the point last discussed HOLCOMB, J., concurs; upon the other questions considered he expresses no opinion.

NORVAL, C. J., concurring.

I adhere to the conclusion reached by the majority of the court in *State v. Moores*, 55 Nebr., 480. In my view that decision rests upon sound legal principles, and that the arguments of the majority opinion have never been successfully answered, and are believed to be unanswerable. Believing as I do, that the act under which the governor's appointees were named is violative of the constitution, the respondents should not be deprived of their offices. The writ should also be denied on the ground that the judgment in *State v. Moores, supra,* is conclusive against the parties to this record.