8]                    JANUARY TERM, 1908.                    197

Chicago, St. P., M. & O. R. Co. v. Douglas County, 134 Wis. 197.

CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY
COMPANY, Respondent, vs. DOUGLAS COUNTY and
others, Appellants.

*December 14, 1907—January 8, 1908.*

*Appeal and error: Questions considered: Demurrer: Joinder of
causes of action: Taxation: Railroads: Land-grant lands: Bene-
ficial ownership: Action to set aside tax deeds: Estoppel
against the state.*

1. On review of an order overruling a demurrer because several
   causes of action are improperly united in the complaint, the
   underlying question is whether the complaint states a cause
   of action, since, before it can be determined whether or not
   causes of action are improperly united, it must be determined
   whether a cause of action is stated and then whether there is
   more than one cause of action.

2. In an action by a railroad company to set aside tax deeds issued
   on lands lying within a land grant made by Congress to the
   state, and by it granted to the predecessors of plaintiff, the al-
   legations of the complaint, stated in the opinion, are *held* to
   show that plaintiff was the beneficial owner of the lands in
   question and that such lands were subject to taxation, unless
   the state was estopped from levying, assessing, and enforcing
   the payment of taxes against such lands.

3. Where a state makes itself a party to an action or a contract
   or a grant in its proprietary capacity, it is subject to the
   law of estoppel as other litigant or contracting parties.

4. A state cannot by acts *in pais* be estopped to exercise its taxing
   or police power.

5. The taxing power of the state may by regular action of the state,
   through its law-making power and for a consideration, be sus-
   pended as to a particular piece of property or a particular per-
   son, and such formal action of the state will bind it *ex con-
   tractu* under the clause of the federal constitution forbidding
   the state to enact laws impairing the obligation of contracts,
   provided there is an obligation of contract independent of the
   constitutional provision.

6. A state is not estopped to exercise its power of assessment and
   taxation with reference to certain lands merely because it may
   have made or continues to make wrongful claim to own such
   lands.

7. In an action by a railroad company to set aside tax deeds issued on lands lying within a land grant made by Congress to the state and by it granted to the predecessors of plaintiff, brought against the counties in which the lands lay and their grantees (assuming, but not deciding, that the plaintiff can raise the question of estoppel in such suit in which the state is not expressly a party), the complaint, stated in the opinion, is *held* to show that the lands in question were subject to taxation, and that there could be no estoppel *in pais* asserted against the exercise by the state of its taxing powers.

APPEAL from an order of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

The appeal is from an order overruling the separate demurrers of *Douglas* county and its county clerk, *Washburn* county and its county clerk, and *W. C. Crocker* and others to the amended complaint.

*W. R. Foley* and *L. H. Mead,* for the appellants.

For the respondent there was a brief by *Luse, Powell & Luse,* and oral argument by *L. K. Luse.*

Among other references the following were cited upon the part of the appellants: Sec. 2, ch. 10, Laws of 1882; ch. 29, Laws of 1883; *Strother v. Lucas,* 12 Pet. 410, 454; *Fletcher v. Peck,* 6 Cranch, 87, 128; *Deseret S. Co. v. Tarpey,* 142 U. S. 241, 12 Sup. Ct. 158; *Schulenberg v. Harriman,* 21 Wall. 44; *Calhoun Co. v. Am. E. Co.* 93 U. S. 124; *Rogers L. M. Works v. Am. E. Co.* 164 U. S. 559, 17 Sup. Ct. 188; *Hackett v. Carter,* 38 Wis. 394.

Among other references the following were cited upon the part of the respondent: Sec. 2620, Stats. (1898); *West v. Walker,* 77 Wis. 557, 46 N. W. 819; *Woodward v. Hanchett,* 52 Wis. 482, 9 N. W. 468; *Leinenkugel v. Kehl,* 73 Wis. 238, 40 N. W. 683; *Ellis v. N. P. R. Co.* 77 Wis. 114, 45 N. W. 811; *Grady v. Maloso,* 92 Wis. 666, 66 N. W. 808; *Draper v. Brown,* 115 Wis. 361, 91 N. W. 1001; *Douglas Co. v. Walbridge,* 38 Wis. 179; *Dartmouth College v. Woodward,* 4 Wheat. 518; *Pratt v. Brown,* 3 Wis. 603;

8]          JANUARY TERM, 1908.'          199.

Chicago, St. P., M. & O. R. Co. v. Douglas County, 134 Wis. 197.

*State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 612, 40 N. W. 487; *Stedman v. Berlin,* 97 Wis. 505, 73 N. W. 57; *Am. S. & R. Co. v. Colorado,* 204 U. S. 103, 27 Sup. Ct. 198; *McCormick v. Hayes,* 159 U. S. 332, 16 Sup. Ct. 37; *State ex rel. Parsons v. Comm'rs,* 9 Wis. 236; *Sloan v. State,* 51 Wis. 623, 8 N. W. 393; Bigelow, Estoppel (5th ed.) 341; 11 Am. & Eng. Ency. of Law (2d ed.) 396; 16 Cyc. 714; *Bentley v. State,* 73 Wis. 416, 41 N. W. 338; *Mulcairns v. Janesville,* 67 Wis. 24, 29 N. W. 565; *Wallace v. Menasha,* 48 Wis. 79, 4 N. W. 101; *C., M. & St. P. R. Co. v. State,* 53 Wis. 509, 10 N. W. 560; *Houston v. State,* 98 Wis. 481, 74 N. W. 111.

TIMLIN, J.   The complaint in question sets forth that the plaintiff is a railroad corporation organized on May 25, 1880, by the consolidation as authorized by law of the North Wisconsin Railway Company and the Chicago, St. Paul & Minneapolis Railway Company, which last-named corporations had theretofore been organized and existing railway corporations—the North Wisconsin Railway Company since 1871; that each was organized under and pursuant to the laws of Wisconsin; the legal status of the three counties defendant; the official character of the three county clerks defendant; the corporate character of the private corporations defendant; that defendants Arnold, Moffet, McLean, Durant, Farman, Alvord, Guaranteed Investment Company, Lawler, Powers, *Ryan,* Riley, *Crocker,* Elliott, Bond, Harmon, Barbour, Franceshetti, *J. L. Gates Land Company, James L. Gates, Kennedy, Smith,* Boyd, and each of the three counties, hold certificates of tax sale against the lands hereinafter described, running back, in one case at least, to 1885, and continuing down until 1906; and that the defendants *Mackey,* Durant, Farman, *Ryan, Washburn county,* Riley, Bond, Jr., Mary L. Bond, Barbour, Franceshetti, *J. L. Gates Land Company,* Smith, and North Wis-

consin Lumber Company hold or claim under tax deeds issued upon tax sales of said land. It is averred that each, every, and all of these tax certificates and tax deeds are clouds upon "the right, title, and interest of this plaintiff in and to said lands, and all of them." The groundwork of plaintiff's claim that the tax sales were void is so intimately bound up with the statement of plaintiff's title to these lands that it can be better stated in connection therewith.

The Congress of the United States, by an act approved June 3, 1856 (11 Stats. at Large, 20, ch. 43), and another act approved May 5, 1864 (13 Stats. at Large, 66, ch. 80), granted certain lands to the state of Wisconsin for the purpose of aiding in the building of a line of railroad from a point on the St. Croix river or lake between townships 25 and 31 to the west end of Lake Superior, and from some point on the line of said railroad a branch line to Bayfield, Wisconsin, the grant to include every odd-numbered section along the lines of said railroad for ten miles in width upon each side thereof. This grant was upon certain terms and conditions, fully set forth in said acts of Congress. Thereafter the state of Wisconsin duly accepted the said grants of land, and thereafter on March 11, 1874, in and by ch. 126 of the laws for that year, the legislature of the state of Wisconsin granted to the said North Wisconsin Railway Company the lands granted to the state for the purpose of aiding in the building of the railroad from St. Croix river to Bayfield; and later the legislature of Wisconsin, by ch. 10, Laws of 1882, granted to the plaintiff the lands along said line of railroad extending from a point near Spooner, Wisconsin, to the west end of Lake Superior. Both of these grants inured to the benefit of the plaintiff; the latter by direct grant, and the former by reason of the plaintiff being the successor of the North Wisconsin Railway Company. These grants were made subject to certain conditions contained in ch. 126, Laws of 1874, and ch. 10, Laws of 1882, which required the

building of said lines of railroad within a specified time, and further authorized and required the governor of the state of Wisconsin from time to time to execute and deliver to the plaintiff patents for the lands aforesaid as fast as the railroad or railroads were completed in twenty-mile sections, and when the entire line or lines of railroad were completed to issue and deliver patents for all the lands so granted. It is averred that the North Wisconsin Railway Company accepted all the terms and conditions of ch. 126, Laws of 1874, and by itself and by the plaintiff as its successor completed the line of railroad through Bayfield on or before December 3, 1883. The plaintiff accepted all the conditions of ch. 10, Laws of 1882, complied with the requirements of that law, and completed the building of the railroad through to the west end of Lake Superior before December 1, 1882. The grants of land were fully ratified and confirmed by ch. 29, Laws of 1883, and ch. 262, Laws of 1883. In and by the act of Congress of May 5, 1864 (13 Stats. at Large, 67, ch. 80), the time fixed for the completion of the railroads under the grant of June 3, 1856, was extended until May 5, 1869, and the United States government at no time took any proceeding to resume or forfeit said grants, but at all times ratified, recognized, and fulfilled the same in all particulars except as hereinafter stated.

The North Wisconsin Railway Company with reference to the line of railroad between St. Croix river and the village of Bayfield, and the plaintiff with reference to the line of road connecting with that line near the village of Spooner and extending to the west end of Lake Superior, each duly and definitely located its line of railroad and caused to be filed with the secretary of the interior of the United States government at Washington a map of such location. This location and map was duly approved by the secretary of the interior, and the location of each road duly accepted and approved by the state of Wisconsin and the lines of railroad

constructed, built, and completed along the line so selected
and approved. From time to time during the construction
of said lines of railroad and each of them proof was made and
filed with the governor of the state of Wisconsin of the com-
pletion of each twenty-mile section thereof; also like proof,
certified by the governor of the state of Wisconsin, was pre-
sented to the secretary of the interior. These proofs were
duly approved, accepted, and acted upon by the governor of
Wisconsin and the secretary of the interior from time to time.
Pursuant thereunto a patent was issued by the governor of
the state of Wisconsin to the North Wisconsin Railway Com-
pany January 2, 1875, for part of said lands; another patent
April 23, 1885, for another part of said lands; another pat-
ent February 14, 1884, for another portion of said lands.
The complaint then avers that by reason of the acceptance
by the state of Wisconsin of the lands granted by the United
States under the acts of Congress before mentioned and the
granting of said lands to the North Wisconsin Railway Com-
pany and to the plaintiff, and the full acceptance on the part
of the North Wisconsin Railway Company and the plaintiff
of the terms and conditions of said grants and the perform-
ance of each and all of said conditions, including the con-
struction of said lines of railroad and the completion thereof
and making proper and regular proofs of such completion,
and the acceptance thereof by the state of Wisconsin, and the
certification and acceptance of the location and the building
and construction of said lines of railroad, the plaintiff became
and was and still is entitled to the land and all of the land in
the alternate or odd-numbered sections adjacent to the lines
of railroad so located and constructed within the ten-mile
limit on either side thereof, excepting such lands as had,
prior to the location of said lines of railroad, been sold, re-
served, or otherwise disposed of by the United States. The
state of Wisconsin has heretofore, and always since the year
1883, recognized and acquiesced in this claim of the plaintiff

to all of the lands in the odd-numbered sections within the limit aforesaid, except so far as said state has made claim to certain lands granted to it by the United States government as swamp lands about the year 1850. It is averred that the land described in the complaint is within ten miles of the line or lines of railroad located and built. The description shows that it is in odd-numbered sections and upwards of 2,000 acres of land, and it is averred that the lands are vacant, unoccupied, are not mineral lands or other lands reserved by the United States, and were not and had not been granted, sold, or otherwise appropriated by the United States prior to the location, building, and completion of said lines of railroad, and said lands were not, nor was any part of them, swamp or overflowed lands, or lands thereby unfitted for agricultural purposes.

This constitutes the statement of plaintiff's right, interest, or title in and to the lands in question. It is then averred that the state of Wisconsin through its proper officers, its governor and commissioners of public lands, wrongfully made claim to all the lands in question as swamp lands, contending that the state owned said lands because they had passed to it by grant from the United States under act of Congress of 1850 (Act Sept. 28, 1850, ch. 84, 9 Stats. at Large, 519); and the state of Wisconsin has wrongfully persisted in making this claim to the lands described in the complaint for upwards of twenty years, has refused from time to time upon due and proper demand to issue or deliver to the plaintiff a patent or patents for said lands or any part thereof, and has made frequent and persistent claims before the land department of the United States that the lands in question belong to the state of Wisconsin under the swamp land grant of 1850, and this notwithstanding the lands in question had been duly certified by the secretary of the interior to the state of Wisconsin as part of the grant of lands made to said state for the purpose of constructing the lines of railroad be-

fore mentioned. On or about December 31, 1887, the state of Wisconsin executed and delivered to the United States a quitclaim deed of release to the lands in question for the purpose of furthering the claim of the state of Wisconsin to said lands as being part of the swamp land grant of 1850. If the claim of the state of Wisconsin to said lands was well founded the plaintiff would have been by the act of Congress entitled to receive indemnity lands outside of said ten-mile limit in lieu of such lands which could have been lawfully claimed by the state of Wisconsin as swamp lands. But the matter coming before the secretary of the interior for consideration on and between February 11, 1890, and February 12, 1891, that officer denied the claims of the state of Wisconsin to the lands in question and refused to permit or allow the plaintiff to take or receive other indemnity lands in lieu thereof, and the lands in question were charged up to the plaintiff as part of its grant and in the full and final adjustment of its land grant. It is then averred that the state of Wisconsin, notwithstanding the foregoing, has refused to issue patents covering the lands in question to the plaintiff, whereby the plaintiff has been wrongfully deprived of receiving the due and proper evidence of its title to said lands and has been unable to sell, dispose, or make use of said lands, to its great damage. The acts of assessing, taxing, selling for nonpayment of taxes, and issuing tax deeds, as hereinbefore mentioned, upon the lands in question, are then averred to be acts of the state of Wisconsin operating through the counties and county officers aforesaid; and it is claimed that the state is estopped, by its conduct in making claim to said lands and refusing said patents, from so taxing said lands, and the relief demanded is that the court decree that the lands in question were not taxable, that the claims of any and all of the defendants to said lands are unwarranted and void, and that the defendant counties and their officers be restrained and enjoined from selling said lands

or any of them for taxes, or issuing or delivering tax deeds upon said lands, until the state of Wisconsin issue patents of said lands to the plaintiff.

Each of the demurrers raises the objection that the complaint does not state facts sufficient to constitute a cause of action, but the separate demurrer of the county of *Washburn* and that of *W. C. Crocker* and others also proceed upon the ground that several causes of action have been improperly united. The underlying question is whether the complaint states a cause of action, because, before we can determine whether or not causes of action are improperly united, we must determine whether a cause of action is stated and then whether more than one cause of action is stated. *Lee v. Simpson,* 29 Wis. 333; *Koepke v. Winterfield,* 116 Wis. 44, 92 N. W. 437; *Boyd v. Mut. F. Ins. Asso.* 116 Wis. 155, 90 N. W. 1086, 94 N. W. 171. The averments of the complaint above recited and to be taken as true on demurrer amply show that the plaintiff is the beneficial owner of the lands in question and that such lands are subject to taxation (*Wis. Cent. R. Co. v. Price Co.* 133 U. S. 496, 10 Sup. Ct. 341, affirming same case, 64 Wis. 579, 26 N. W. 93, as to lands situate like the lands in question within the ten-mile limit), unless the state is estopped from levying, assessing, and enforcing the payment of taxes against such lands. The decision of the circuit court in favor of respondent must therefore be upheld, if at all, on the ground that by reason of the alleged wrongful and unjust claim of the state to own the lands in question under the swamp land grant of Congress and the acts aforesaid of the state officers in assertion of that claim, the state, and through the state its subordinate municipal agencies, the counties and county officers defendant, are estopped from levying, assessing, and enforcing by sale taxes upon the lands in question.

Perhaps no other technical legal term is more loosely used than the term "estoppel." It is used sometimes to

206 SUPREME COURT OF WISCONSIN. [JAN.

Chicago, St. P., M. & O. R. Co. v. Douglas County, 134 Wis. 197.

merely indicate the existence of an ordinary prior paramount right in the opposite party, or a general rule of law, as where it is said that the state cannot be estopped except by a valid act of its legislature (*Alexander v. State,* 56 Ga. 478), or to indicate the conclusive effect of a judgment, or to express the rule of law that courts will not enforce a demand contrary to public welfare or morals, or the rule of equity that he who hath committed iniquity shall not have equity, or that suitors who invoke relief from a court of equity must come into court with clean hands, or waiver, or acquiescence. Quite uniformly it is held to apply only to matters of fact; but cases are not wanting in which one is said to be estopped to set up a right under the constitution, or to take inconsistent legal positions, or to deny that he is an officer *de jure* in a criminal prosecution for acts done as such officer. *State v. Stone,* 40 Iowa, 547; *People ex rel. Dunn v. Bunker,* 70 Cal. 212, 11 Pac. 703; *U. S. v. Gale,* 109 U. S. 65, 3 Sup. Ct. 1. It has been denied and affirmed with equal confidence that an equitable estoppel can be applied to the government. *People v. Brown,* 67 Ill. 435; *State v. Bevers,* 86 N. C. 588; *Comm. v. Pittsburg F. & I. Co.* 2 Pears. (Pa.) 374; *Montague's Adm'r v. Massey,* 76 Va. 307; *Board Co. Comm'rs v. Dickey,* 86 Minn. 331, 90 N. W. 775; *Heidelberg v. St. Francois Co.* 100 Mo. 69, 12 S. W. 914; *U. S. v. Willamette V. & C. M. W. Co.* 54 Fed. 807; *U. S. v. Stinson,* 125 Fed. 907, 60 C. C. A. 615; *Carr v. U. S.* 98 U. S. 433; *People ex rel. Chope v. D. & H. P. R. Co.* 37 Mich. 195. It is, however, quite well settled that when the state makes itself a party to an action or to a contract or grant in its proprietary capacity it is subject to the law of estoppel as other parties litigant or other contracting parties. *Cunningham v. Shanklin,* 60 Cal. 118; *State ex rel. Smyth v. Kennedy,* 60 Neb. 300, 83 N. W. 87; *Stone v. Bank of Ky.* 174 U. S. 799, 19 Sup. Ct. 881; *State v. Ober,* 34 La. Ann. 359; *State v. Taylor,* 28 La. Ann. 460; *St.*

*Paul, S. & T. F. R. Co. v. St. Paul & Pac. R. Co.* 26 Minn. 31, 49 N. W. 303; *Railroad Co. v. Schurmeir,* 7 Wall. 272; *Comm. v. André's Heirs,* 3 Pick. 224. But in North Carolina it is held that the state cannot be estopped even by deed or grant. *Taylor v. Shufford,* 11 N. C. (4 Hawks) 116; *Candler v. Lunsford,* 20 N. C. (4 Dev. & Bat. L.) 407; *Wallace v. Maxwell,* 32 N. C. (10 Ired. L.) 110. In Alabama, although the state may be estopped by its express grant, public policy forbids the application of the rule of estoppel *in pais. State ex rel. Lott v. Brewer,* 64 Ala. 287; *Jackson Co. v. Derrick,* 117 Ala. 348, 23 South. 193. It is also quite settled that the unauthorized acts of its governor or other state officer will not estop a state. *Grunert v. Spalding,* 104 Wis. 193, 80 N. W. 589; *Pulaski Co. v. State,* 42 Ark. 118. And where the state succeeds by act of confiscation to the estate of one subject to an estoppel it gets only his title and is therefore bound by the estoppel. *Carver v. Astor,* 4 Pet. 1. There is no estoppel following a grant by the state so as to convey a title after acquired by the state. But this is probably upon the ground that the state only conveys what title it possesses and does not warrant the title. *Casey's Lessee v. Inloes,* 1 Gill, 430; *St. Louis R. & W. G. Co. v. Langley,* 66 Ark. 48, 51 S. W. 68.

The decision of the court below, however, goes far beyond any of the foregoing cases and to the full extent that the state may by acts *in pais* be estopped to exercise its taxing power, because the estoppel here pleaded is one thought to arise against the state from acts of the state and only to affect the counties defendant because, in assessing and levying the taxes in question, they represent the state and are therefore bound by the alleged estoppel. Examining this question upon principle we find it adjudged that the state cannot by express grant divest itself of its police power (*Thorpe v. Rutland & B. R. Co.* 27 Vt. 140; *Butchers' Union S. H. & L. S. Co. v. Crescent City L. S. L. & S. H. Co.* 111 U. S.

208    SUPREME COURT OF WISCONSIN.    [JAN.

Chicago, St. P., M. & O. R. Co. v. Douglas County, 134 Wis. 197.

746, 4 Sup. Ct. 652) nor of its power of eminent domain. *In re Opening of Twenty-Second St.* 102 Pa. St. 108. It is doubtless the law that the taxing power of a state may by regular action of the state, through its law-making power and for a consideration, be suspended as to a particular piece of property or a particular person, and such formal action of the state will bind the state *ex contractu* under that clause of the federal constitution forbidding the state to enact laws impairing the obligation of contracts. It is also true that there must be an obligation of the contract independent of this constitutional provision before the constitutional interdict can take effect. This power to so formally and in part divest itself of the power of taxation is upheld because the state is theoretically not thereby limited in its power of taxation, but, having the capacity to contract to receive its taxes in advance, is presumed to have done so when it entered into the legislative contract for exemption. Cooley, Const. Lim. (7th ed.) 395. In *West Wis. R. Co. v. Trempealeau Co.* 35 Wis. 257, COLE, J., said:

"The doctrine that a state may grant or bargain away beyond recall the right of taxation, a high political and sovereign power, essential to the very existence of the state, and without which no governmental functions can be exercised or carried on, has always seemed to me to rest upon very unsatisfactory grounds, and I am unable to assent to its general correctness."

In *Att'y Gen. v. R. Cos.* 35 Wis. 425, RYAN, C. J., speaking for the court, at pages 572, 574, after quoting this language, said: "This has been the unanimous opinion and decision of this court, always, in all cases before it." The taxing power is a legislative power, an incident of sovereignty essential to the existence of a state, and exists without being expressly conferred on the state. *McCulloch v. Maryland,* 4 Wheat. 316; *Railroad Co. v. Peniston,* 18 Wall. 5; *West Hartford v. Board of Water Comm'rs,* 44

Conn. 360; *McKeen v. Northampton Co.* 49 Pa. St. 519. Said MARSHALL, C. J., in *Providence Bank v. Billings,* 4 Pet. 514, 561:

"That the taxing power is of vital importance, that it is essential to the existence of government, are truths which it cannot be necessary to reaffirm. They are acknowledged and asserted by all. It would seem that the relinquishment of such a power is never to be assumed. We will not say that a state may not relinquish it—that a consideration sufficiently valuable to induce a partial release of it may not exist; but, as the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the state to abandon it does not appear."

And it is said in *Easton Bank v. Comm.* 10 Pa. St. 442, 450: "If such an exemption exists, it must be the result of a deliberate intention to relinquish this prerogative of sovereignty, distinctly manifested." See, also, *Christ Church v. County of Phila.* 24 How. 300; *Gilman v. Sheboygan,* 2 Black, 510; *Memphis G. L. Co. v. Shelby Co.* 109 U. S. 398, 3 Sup. Ct. 205; *East Saginaw Mfg. Co. v. Saginaw,* 19 Mich. 259; *East Saginaw S. Co. v. East Saginaw,* 13 Wall. 373; *Erie R. Co. v. Comm.* 66 Pa. St. 84; *Erie R. Co. v. Pennsylvania,* 21 Wall. 492; *Bradley v. McAtee,* 7 Bush, 667; *People ex rel. Cunningham v. Roper,* 35 N. Y. 629; *Citizens' Sav. Bank v. Owensboro,* 173 U. S. 636, 19 Sup. Ct. 571; *Stone v. Bank of Comm.* 174 U. S. 412, 19 Sup. Ct. 747.

In *Northern Cent. R. Co. v. Maryland,* 187 U. S. 258, 270, 23 Sup. Ct. 62, there was at first a controversy between the railway company and the state with reference to the right of the former to exemption from taxation, and in settlement of this controversy and of certain pending actions the Maryland legislature by enactment provided for the payment of certain sums of money by the railway com-

pany and the adjustment of pending suits and differences and fixed a rate for future taxation. At the time of the compromise act, but not at the time of granting the original charter, the constitution of Maryland reserved the power to repeal, modify, or alter charters of incorporation. In 1890 the state enacted a general law the effect of which was to materially increase the tax of the railroad company over and above what it would have been under the compromise act. It was held that the latter was a valid exercise of the legislative power. This would have been a proper case for the application of the doctrine of estoppel had the state been subject to that law in the exercise of its taxing power. The state had through its legislature assented to and received the avails of the compromise and deprived the railroad company of its opportunity to make the claim that its first charter constituted a contract between the state and itself. But it was held that the law of 1890 was valid and the property of the railway company subject to taxation at the increased rate therein provided for. In *Crane v. Reeder,* 25 Mich. 303, it was decided that the state did not waive its right to insist upon an escheat, or estop itself from afterward claiming lands as escheated lands, by causing the same to be assessed for taxation, or by taking proceedings to enforce payment of the taxes by selling and conveying the lands by state tax deed for such delinquent taxes. In *Philadelphia M. & T. Co. v. Omaha,* 63 Neb. 280, 88 N. W. 523, where the city treasurer erroneously marked on the tax records of his office that certain real-estate taxes were paid, and the third party, relying on and in faith of that record, loaned money upon and acquired title to the land believing that such taxes were paid, it was held that the rule of estoppel *in pais* will not be held applicable to the acts of municipal officers in the exercise of governmental powers. *People v. Brown,* 67 Ill. 435, is followed and approved, and

*Chicago v. Sexton,* 115 Ill. 230, 244, 2 N. E. 263, is quoted from as follows:

"We hold simply that a municipal corporation may be estopped by the action of its proper officers when the corporation is acting in its private, as contradistinguished from its governmental, capacity and has lawful power to do the act."

To the same effect is *Kuhl v. Mayor,* 23 N. J. Eq. 84, although other reasons are given for the decision.

We distinguish the cases of *State v. Milk,* 11 Fed. 389; *Comm. v. André's Heirs,* 3 Pick. 224, and other cases of that class as involving a matter of grant rather than an exercise of the taxing power, and the case of *People v. Hagadorn,* 104 N. Y. 516, 10 N. E. 891, as not involving this question, because the tax deed was void upon other grounds and the estoppel mentioned by the court, and apparently decided without much discussion, was that the state, after having assumed to tax the lands as the property of others, could not set up a proprietary right in itself. We distinguish the case of *Iowa R. L. Co. v. Story Co.* 36 Iowa, 48, as involving no question of estoppel, because the lands there in question were not liable for taxation, neither the legal title nor the beneficial interest having passed to the first grantee from the government. It is vain to declare for or against an estoppel to levy and collect taxes in an opinion which at the same time holds that the land was not taxable under the general laws. On the other hand, *Whitehead v. Plummer,* 76 Iowa, 181, 40 N. W. 709, was a case where the question of estoppel might have arisen if the acts of the governor were the acts of the state, because the lands were held to be otherwise taxable. Here, however, the decision was against the estoppel claimed, but apparently on the ground that the governor in this respect was not the state. *Calhoun Co. v. Am. E. Co.* 93 U. S. 124, involved the question whether a county, proprietor of certain lands not liable to taxation by the laws of Iowa

while county lands, could, after transfer to the emigrant company, by the terms of which it was agreed that no taxes were due and payable on said lands, go back of said transfer and assess against said lands taxes claimed to be in arrears for said two years.   The court said:

"Other suggestions failing, the respondents contend that the agreement not to tax the land before the conveyance was made is without authority of law and is null and void; but the court here is not able to concur in that proposition, as the lands were held by the county in their proprietary right, and as such were as much subject to bargain and sale as lands held by an individual."

The real question in this case was whether or not during the two years in question the lands were the property of the county and therefore not taxable by statute.   The estoppel here, if that rule was proper to be applied at all, was an estoppel to claim the lands were not the property of the county during the two years in question, and the state law exempting them from taxation worked out the invalidity of the taxes.   *Rogers L. M. Works v. Am. E. Co.* 164 U. S. 559, 17 Sup. Ct. 188, relates to the estoppel of the state in the capacity of proprietor by the determination of the secretary of the interior having jurisdiction of the subject matter, coupled with the reception and retention thereunder by the state of an inconsistent grant.   We cannot perceive in either of these cases any decision which goes to the extent that a state may be estopped from an exercise of its taxing power by acts *in pais*.   The estoppel pleaded here is rather based upon alleged inconsistent conduct.

The plaintiff was not and does not claim to have been misled or deceived into failing to pay its taxes by the act of the state.   It is sought to hold the state to its alleged wrongful claim that the lands in question belong to it.   The mutuality of estoppel might also tend to conclude the respondent on this proposition.   It is not clear how the respondent could

claim to hold the state by this estoppel and at the same time claim to be itself the owner of the lands. But we do not put the decision on this ground. We find no authority for the proposition that a state may be estopped to exercise its power of assessment and taxation with reference to certain lands merely because the state may have made or continues to make wrongful claim to own said lands. Fundamental principles are opposed to the extension of the doctrine of estoppel to such a case. The cases which hold that a state can only relinquish its power of taxation by express legislative act based upon a consideration, which consideration is supposed to represent the taxes relinquished, are opposed to any such rule. The analogies to be deduced from the other sovereign powers necessary to the existence of the state, such as the power of eminent domain, the police power, and the power to declare war and make peace (where such last-named powers are not by written constitution vested elsewhere), are all antagonistic to the idea that a state can be subject to an estoppel in the matter of the exercise of its taxing power. Assuming as most favorable to the respondent, but without deciding, that the plaintiff can raise this question in a suit against the counties and county officers to which suit the state is not expressly a party, we are constrained to hold that the complaint shows the lands to be subject to taxation, and that there can be no estoppel *in pais* asserted against the exercise by the state of the taxing power of the state; and therefore the order overruling the demurrers should be reversed and the cause remanded with directions to sustain the demurrers.

*By the Court.*—It is so ordered, and the cause remanded for further proceedings in accordance with this opinion.